**HYUNDAI PIPE CO., LTD., Union Steel Mfg. Co., Ltd., Pusan Pipe Co., Ltd. and Korea Steel Pipe Co., Ltd., Plaintiffs,**

v.

**U.S. INTERNATIONAL TRADE COMMISSION and the United States, Defendants.**

Court No. 84–6–00763.

United States Court of International Trade.

Nov. 5, 1986.

Mudge Rose Guthrie Alexander & Ferdon (N. David Palmeter, Donald B. Cameron, Jeffrey S. Neeley and Kevin B. Dwyer), Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Dept. of Justice, Commercial Litigation Branch (Platte B. Moring, III), Lyn M. Schlitt, General Counsel, Michael P. Mabile, Asst. General Counsel, U.S. Intern. Trade Com'n (Edwin J. Madaj); Washington, D.C., for defendants.

Schagrin Associates (Roger B. Schagrin and Paul W. Jameson), Washington, D.C., for amicus curiae The Committee on Pipe and Tube Imports.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Judge.

Plaintiffs instituted this action pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (Supp. II 1984), and 28 U.S.C. § 1581(c) (1982), to contest the final affirmative injury determination of the United States International Trade Commission (Commission) in the antidumping investigation of *Certain Welded Carbon Steel Pipes and Tubes From the Republic of Korea and Taiwan,* 49 Fed.Reg. 19747 (May 9, 1984), which resulted in the issuance by the United States Department of Commerce, International Trade Administration (Commerce) of two antidumping duty orders on categories of products covered by the Commission's determination.

Plaintiffs now move for a preliminary injunction to delay an administrative review of the antidumping duty orders under section 751 of the Trade Agreements Act of 1979, as amended by the Tariff and Trade Act of 1984, 19 U.S.C. § 1675, for the eleven month period prior to October 1, 1984. Plaintiffs' motion is denied.

### I. Background

Commerce published final antidumping duty orders on two categories of pipes and tubes from the Republic of Korea, finding margins of 1.47 percent and .90 percent. During the period of the investigations, the average margins at which these classes of merchandise undersold domestic products were 30 percent and 19 percent respectively.

On June 27, 1984 plaintiffs filed an action contesting the Commission's determination

that an industry in the United States is materially injured by imports of the Korean pipe and tube products. Plaintiffs argue that the affirmative injury determination of the Commission is unlawful since it failed to take into consideration the size of the dumping margins in connection with its causation analysis under 19 U.S.C. § 1677(7)(B). The case is pending before the Court and all issues have been fully briefed. Oral argument was held on July 17, 1986.

In accordance with a voluntary restraint agreement entered into by the United States and the government of Korea, the anti-dumping duty orders were revoked by Commerce for all pipes and tubes exported to the United States on or after October 1, 1984. As a result, only pipes and tubes entered between the publication of October 1983 preliminary dumping determinations and the date of effective revocation remain subject to the antidumping duty orders.

In June 1986, petitioner, The Committee on Pipe and Tubes Imports, made a request under 19 U.S.C. § 1675(a) and 19 C.F.R. § 353.53a(a)(5) that Commerce commence an administrative review under section 751. Commerce published notice of its initiation of the administrative review and on October 7, 1986 issued questionnaires, requesting that plaintiffs submit within 45 days information relating to the administrative review.

Plaintiffs moved for a temporary restraining order and a preliminary injunction on October 28, 1986 to delay the administrative review. The Court denied plaintiffs' motion for injunctive relief pending a hearing on plaintiffs' motion for a preliminary injunction. The hearing was held on November 3, 1986.

Plaintiffs seek to delay the administrative review under section 751 pending the resolution of their challenge to the legality of the Commission's final affirmative injury determination. Plaintiffs say they will suffer irreparable harm if required to participate in reviews, since they "will have to devote enormous amounts of time, resources, and expense to provide the voluminous data required by the Commerce Department in accordance with their questionnaires." Brief for Plaintiffs at 7.

The government opposes plaintiffs' motion for a preliminary injunction contending (1) the Court lacks jurisdiction to grant the requested relief, (2) that plaintiffs' motion fails to state a claim for relief since the statute requires that Commerce commence an administrative review when a proper request is made, and (3) even if injunctive relief could be granted, plaintiffs have not shown that they will be irreparably harmed.

## II. The Preliminary Injunction

### 1. Jurisdiction

Plaintiffs' action is brought under 28 U.S.C. § 1581(c). That provision grants jurisdiction only over those actions specified in 19 U.S.C. § 1516a. The action brought by plaintiffs, specified in 19 U.S.C. § 1516a(a)(2)(B)(i), calls for a review by the Court, on an administrative record, of a final affirmative determination by the Commission under 19 U.S.C. § 1673d(b)(1)(A)(i) that an industry in the United States is materially injured by reason of imports of certain merchandise.

Plaintiffs say that their motion for injunctive relief is not a challenge to Commerce's initiation of a section 751 review or any decision other than the Commission's injury determination. Rather they seek to delay Commerce's review pending the Court's decision as to the legality of the Commission's determination. They contend that the Court has inherent power to issue orders enjoining other federal agencies in order to preserve the status quo in actions brought within its jurisdiction.

The government asserts that plaintiffs' motion for injunctive relief is based on an independent and unrelated claim which is not properly before the Court. It says that questions regarding the commencement of a section 751 review are beyond the scope of the pleadings and do not relate to the validity of the Commission's final affirmative injury determination under *British Steel Corp. v. United States*, 10 CIT ——,

647 F.Supp. 928 (1986), *appeal docketed,* No. 87–1050 (Fed.Cir. Nov. 3, 1986).

The government also argues that plaintiffs' motion must be denied since section 1516a allows parties to commence an action challenging a section 751 proceeding only upon completion of the administrative review. Since the initiation of a section 751 review may not be challenged under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a, the government says that plaintiffs have challenged an interlocutory order not now subject to judicial review, citing *Timken Co. v. United States,* No. 82–6–00890 (CIT Oct. 10, 1986) (Commerce decision to initiate an antidumping investigation is an interlocutory order not currently subject to judicial review).

The government further contends that Commerce's congressional mandate to conduct administrative reviews precludes plaintiff from attempting to impede properly commenced administrative reviews, and therefore, plaintiffs motion presents "a claim for which this Court cannot grant relief." Brief for Defendant at 13.

This is a case in which there has been a full discussion on the merits of the motion. Since the Court finds that a denial of the motion would be required on the merits, the Court declines to resolve with haste the questions raised concerning the scope of its jurisdiction and equitable powers. *See Secretary of the Navy v. Avrech,* 418 U.S. 676, 677–78, 94 S.Ct. 3039, 3040, 41 L.Ed.2d 1033. In light of the complexity of the jurisdictional issues and the exigency with which the motion must be resolved. the Court turns to the merits of plaintiffs' motion for a preliminary injunction.

**2. Criteria for Granting Injunctive Relief**

The Court finds that plaintiffs do not satisfy the criteria necessary for the issuance of a preliminary injunction. In order to prevail on their motion, plaintiffs must show (1) a threat of immediate and irreparable harm; (2) likelihood of success on the merits; (3) that the public interest would be better served by issuing rather than by denying the injunction; and (4) the balance of hardships on the parties favors issuing the injunction. *See, e.g., Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Cir.1983).

Plaintiffs must make a clear showing that they are entitled to this relief. *Asher v. Laird,* 475 F.2d 360, 362 (D.C.Cir.1973); *Dijub Leasing Corp. v. United States,* 1 CIT 42, 51, 505 F.Supp. 1113, 1120 (1980). Plaintiffs have not met their burden of persuasion, or heavy burden of producing evidence, sufficient to justify the extraordinary remedy of a preliminary injunction.

The harm suffered by plaintiffs in the absence of an injunction must be both immediate and irreparable. Plaintiffs argue that they will suffer such harm if required to complete the questionnaires issued by Commerce pursuant to the requested 751 review.

Affidavits submitted by plaintiffs indicate that approximately 1,200 working hours will be spent by Pusan Steel Pipe and 1,120 by Korea Steel Pipe in answering the questionnaires. Plaintiffs also assert that the verification of answers as required by Commerce will compound their costs.

The Court accepts that the time limits imposed by Commerce for completing the questionnaires will cause an immediate financial burden upon plaintiffs. But Commerce issues questionnaires in every case where a party requests administrative review under section 751. The Court is not persuaded that such costs constitute the irreparable harm necessary to warrant injunctive relief. In *FTC v. Standard Oil,* 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980), the Supreme Court rejected the proposition that mere litigation costs, even if substantial and unrecoupable, constitute irreparable injury. *See also UST, Inc. v. United States,* 10 CIT ——, 648 F.Supp. 1 (1986) (citing *Renegotiation Board v. Bannercraft Clothing Co. Inc.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1973)).

Plaintiffs attempt to distinguish such cases by arguing that not all of the ex-

penses suffered will be incidental to litigation. According to plaintiffs, their costs in completing the questionnaires constitute business expenses resulting from the diversion of management and sales personnel from their normal income producing activities.

The parties stipulated at the hearing that time will be diverted from business activities in order to satisfy the requirements of the questionnaires. But increased business expenses alone also do not justify the injunction sought. *S.J. Stile Associates Ltd. v. Snyder,* 68 CCPA 27, 30–31, C.A.D. 1261, 646 F.2d 522, 525–26 (1981); *American Institute for Imported Steel, Inc. v. United States,* 8 CIT 314, 318, 600 F.Supp. 204, 208 (1984).

In any event, the Court finds that the costs borne by the companies in utilizing their own employees is linked directly to the agency action in issuing the questionnaires and consequently is a normal litigation expense. Under the circumstances of this case, the Court is not persuaded that plaintiffs would suffer any irreparable injury justifying issuance of a preliminary injunction.

Plaintiffs say that the strong likelihood that they will prevail in the underlying case challenging the Commission's determination offsets any shortcoming in their showing of irreparable injury. Since the Court is fully briefed, plaintiffs contend, the Court is well aware of the strong likelihood of their success on the merits.

Plaintiffs' action challenging the antidumping duty order, however, presents complex issues making it difficult to assess plaintiffs' likelihood of success. At this time, the Court believes plaintiffs have a moderate likelihood of success on the merits. Even if the case were remanded to the Commission with instructions to consider the size of the dumping margins in connection with its causation analysis, it remains a matter of speculation whether the Commission would ultimately issue a final negative injury determination.

Plaintiffs argue that the issuance of a preliminary injunction would better serve the public interest by delaying an administrative review which may be unnecessary thus conserving limited government resources. They say that delay is particularly appropriate because delaying the annual reviews will have no effect on current or future entries since the antidumping duty orders have been revoked.

While plaintiffs' request has a certain appeal, Commerce should follow the law. Congress has required that Commerce conduct an administrative review of an antidumping duty order upon a timely request by an interested party. 19 U.S.C. § 1675(a). This review process was created to expedite the administration of the assessment phase of antidumping and countervailing duty investigations, to provide a greater role for domestic interested parties and to introduce more procedural safeguards. *See* S.Rep. No. 249, 96th Cong., 1st Sess. 80–81 (1979), U.S.Code Cong. & Admin.News 1979, p. 381. The public interest is served when agencies act in conformity with a statutory mandate designed to achieve goals inuring to the public benefit.

If discretion exists as to when and in what manner reviews will be conducted once initiated, that discretion normally rests in the agency. It is not the role of plaintiffs or the courts to second guess reasonable agency decisions regarding use of its limited resources. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).

Finding that the expense suffered by plaintiffs in completing Commerce questionnaires is not irreparable injury and that plaintiffs only have a moderate likelihood of success on the merits, the Court has little to weigh on plaintiffs' side against the public interest served in not issuing a preliminary injunction. The Court concludes in balancing the hardships that plaintiffs' motion for a preliminary injunction should be denied.