**NISSAN MOTOR CORP. IN U.S.A.,
Nissan Motor Co., Ltd., Plaintiffs,**

v.

**The UNITED STATES; the Department of Commerce, Malcolm T. Baldrige, Secretary of Commerce; Bruce S. Smart, UnderSecretary of Commerce for International Trade; Paul Freedenberg, Acting Assistant Secretary of Commerce for Trade Administration; Gilbert B. Kaplan, Deputy Assistant Secretary of Commerce for Import Administration, Defendants,**

**and**

**The Timken Company,
Defendant-Intervenor.**

**Court No. 86–11–01392.**

United States Court of
International Trade.

Dec. 23, 1986.

Brownstein, Zeidman and Schomer, Irwin
P. Altschuler, David R. Amerine and Don-

ald S. Stein, Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., Dept. of Justice, Platte B. Moring, III, Washington, D.C., for defendants.

Stewart and Stewart, Terence P. Stewart, Washington, D.C., for defendant-intervenor.

## MEMORANDUM OPINION AND ORDER

TSOUCALAS, Judge:

This action is before the Court on plaintiffs' motion for a preliminary injunction to enjoin the International Trade Administration of the Department of Commerce (ITA) from conducting an administrative review and from requiring plaintiffs to respond to questionnaires. Plaintiffs seek to challenge: (1) the authority of the ITA to conduct an administrative review for a period subsequent to the effective date of the ITA's tentative determination to revoke an antidumping finding; and (2) the ITA's ability to require plaintiffs to resubmit information for a period previously reviewed. This Court entertained oral arguments on November 17, 1986 at which time, on consent, The Timken Company was allowed to intervene.

## BACKGROUND

On August 18, 1976, the Treasury Department published an antidumping finding covering tapered roller bearings and certain components thereof ("TRBs") from Japan. T.D. 76–227, 41 Fed.Reg. 34974. Plaintiffs are exporter and distributor, respectively, of the merchandise subject to the antidumping finding. On March 28, 1980, after Commerce assumed responsibility for administration of the antidumping laws, the ITA published its notice of intention to conduct § 751 administrative reviews[1] for all outstanding antidumping findings. 45 Fed.Reg. 20511.

Commerce has initiated reviews for the periods June 1974–July 1980; August 1980–July 1981; August 1981–July 1982; August 1982–July 1983; and August 1983–May 14, 1984. On March 9, 1984, Commerce published the final results of the 1974–1980 administrative review, which revealed that plaintiffs had zero dumping margins. Commerce conducted on site verifications for the 1980–1981 period. On May 14, 1984, Commerce published its preliminary results for the 1980–1981 period indicating plaintiffs had zero dumping margins and included a tentative determination to revoke the antidumping finding covering TRBs from Japan exported by plaintiffs. To this date, there has not even been a preliminary determination as to the review periods 1981–1982, 1982–1983, 1983–May 14, 1984. Plaintiffs have requested on at least three occasions that the ITA issue a final decision as to revocation.

On September 16, 1986, the ITA published its intent to conduct an administrative review for the period August 1985–July 1986, acting on a request by defendant-intervenor,[2] to which plaintiffs had objected. Further, the ITA published on October 3, 1986 its notice of intention to "initiate" a review for the period August 1, 1980–May 14, 1984 and has requested "supplemental" information from plaintiffs for that period. Plaintiffs have received questionnaires pertaining to this review period.

---

1. The Trade Agreements Act of 1979, Pub.L. 96–39, § 751, 93 Stat. 144, 175, (19 U.S.C. § 1675 (1982)), requires the administering authority to conduct annual administrative reviews of outstanding antidumping findings to determine if there are sales at less than fair value, and determine the amount of the antidumping duty, if any, to be assessed (*but see* n. 2. *infra,* as to 1984 amendment).

2. Section 751 of the 1979 Act was amended by the Trade and Tariff Act of 1984, by requiring annual reviews only when a timely request is received. Pub.L. 98–573, § 611(a)(2)(A), 98 Stat. 2948, 3031 (1984), (19 U.S.C. § 1675(a) (1985)). However, this amendment applies to investigations initiated after October 30, 1984, the effective date of the statute. Pub.L. 98–573 § 626(b)(1), 98 Stat. 3042, (effective date provision).

Initially, plaintiffs seek to enjoin the ITA from conducting a review for the 1985–1986 period until the ITA completes its review for August 1980–May 14, 1984 and acts on its preliminary determination to revoke. Plaintiffs argue that the ITA has failed to abide by its own regulations and time limits and due to this delay plaintiffs will be forced to suffer. It is alleged that had the ITA acted to revoke the antidumping finding it would not then have the authority to conduct the 1985–1986 review, since these entries would no longer be subject to the antidumping finding. Plaintiffs further challenge whether the ITA can request new supplemental information for periods in which information was already supplied. Defendant opposes the relief sought by plaintiffs, arguing that this Court does not possess jurisdiction over these issues; plaintiffs have failed to state a claim; have failed to exhaust their administrative remedies; and have failed to set forth sufficient facts to satisfy the criteria for the issuance of a preliminary injunction.

## DISCUSSION

■ This action was commenced under 28 U.S.C. § 1581(i). Defendant claims that the Commerce decision to initiate an administrative review is not a final agency action subject to judicial review and Congress did not provide for interlocutory appeals of delays in § 751 reviews. It is defendant's position that plaintiffs cannot seek judicial review until after Commerce completes its § 751 review. The Court is not persuaded by this argument and instead relies on the decision in *UST, Inc., et al. v. United States*, 10 CIT ——, 648 F.Supp. 1 (1986), *appeal filed*, (Fed.Cir. Dec. 9, 1986).

The court in *UST* reasoned that if it were to accept the argument similar to defendant's here, the possibility would exist that the ITA might determine to never complete a § 751 review and thereby escape judicial scrutiny. *Id.* at ——, 648 F.Supp. at 2–3. Section 1581(i) enables this court to entertain actions pertaining to preliminary administrative decisions related to antidumping duty proceedings provided there is no

challenge to a determination specified in 19 U.S.C. § 1516a. *Ceramica Regiomontana, S.A. v. United States*, 5 CIT 23, 557 F.Supp. 596 (1983). It is clear that this is one type of administrative decision which arises between the final determination (of a dumping finding) and the administrative review of that finding, which cannot be contested via § 1516a. In such circumstances the residual jurisdiction of the court may be invoked. *Royal Business Machines, Inc. v. United States*, 69 CCPA 61, 73–74, 669 F.2d 692, 701–702 (1982); *accord UST, supra; Ceramica Regiomontana, supra.* The ruling in *The Timken Company v. United States*, Court No. 82–6–00890 (October 10, 1986) that the ITA's initiation of a new investigation based on the filing of a new petition was an interlocutory order not subject to judicial review is distinguishable. That action was brought under 28 U.S.C. § 1581(c) not § 1581(i), to contest a new investigation, not inordinate delay in a § 751 review.

■ Similarly, while defendant claims that plaintiffs must exhaust their administrative remedies, more than two years have elapsed since the tentative determination to revoke as to plaintiffs without any further final action by the ITA. Plaintiffs have on several occasions requested Commerce to complete its administrative reviews to no avail, and sometimes without even the benefit of a response. This court shall where appropriate require the exhaustion of administrative remedies. 28 U.S.C. § 2637(d) (1982). Therefore, failure to exhaust administrative remedies in challenging a § 751 review does not bar this Court's jurisdiction. *See Philipp Bros., Inc. v. United States*, 10 CIT ——, ——, 630 F.Supp. 1317, 1320 (1986), *appeal dismissed*, No. 86–1122 (Fed.Cir. July 18, 1986). *See also Manufacture de Machines du Haut-Rhin v. von Raab*, 6 CIT 60, 65, 569 F.Supp. 877, 882–883 (1983).

In thus reaching the issue as to whether a preliminary injunction should issue, plaintiff must clearly demonstrate the existence of the following four factors: (1) the threat of immediate irreparable harm; (2) the like-

lihood of success on the merits; (3) whether the public interest is better served by issuing rather than by denying the injunction; and (4) whether the balance of hardships to the parties favors the issuance of an injunction. *Zenith Radio Corp. v. United States,* 710 F.2d 806, 809 (Fed.Cir. 1983); *S.J. Stile Associates, Ltd. v. Snyder,* 68 CCPA 27, 30, 646 F.2d 522, 525 (1981). In a flexible balancing of hardships approach the showing of ultimate success and the severity of injury are inversely proportional. *American Air Parcel Forwarding Co. v. United States,* 1 CIT 293, 298, 515 F.Supp. 47, 52 (1981).

Plaintiffs claim that they will be irreparably harmed if forced to complete the questionnaires required by the ITA for the periods 1985–1986, and the supplemental information for 1980–1984. In the two affidavits submitted by plaintiffs it is alleged that it will require approximately 2200 man hours to supply the information requested. Plaintiffs further claim that due to the restructured format of the questionnaires requiring information on a sale by sale basis, plaintiffs may not be able to compile such information based on its method of record keeping, since this type of information has never before been requested. It is plaintiffs' position that if the ITA decides to issue a final determination to revoke as to plaintiffs then these responses will be totally unwarranted. While this Court can appreciate that plaintiffs seek to avoid the expenditure of time and resources which may ultimately prove unnecessary, this cannot be equated with the threat of immediate and irreparable harm.

■ The mere showing that costs will be incurred in compiling the information does not satisfy plaintiffs' burden. *UST,* 10 CIT at ——, 648 F.Supp. at 4. The financial burden of completing the questionnaires is not irreparable harm even if resources are diverted from business activity for this purpose. *Hyundai Pipe Co., et al. v. United States,* 10 CIT ——, 650 F.Supp. 174 (1986). "The costs borne by the companies in utilizing their own employees is linked directly to the agency

action in issuing the questionnaires and consequently is a normal litigation expense." *Id.* at ——, 650 F.Supp. at 177. Even unrecoupable litigation costs do not constitute irreparable injury, *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974), nor do the expense and disruption associated with delay in administrative proceedings. *FTC v. Standard Oil,* 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980). Furthermore, while the revised questionnaire format may produce difficulties in plaintiffs' ability to respond, this Court cannot prevent Commerce from employing this new methodology when there has been no showing that it is an unreasonable means to obtain the necessary data. *See, e.g., UST,* 10 CIT at ——, 648 F.Supp. at 5.

Similarly, plaintiffs' showing of likelihood of success on the merits falls short of its required burden. Relevant to an analysis as to whether the ITA can obtain information for a period subsequent to May 14, 1984 (the date of the tentative determination to revoke), is the decision in *Freeport Minerals v. United States,* 776 F.2d 1029 (Fed.Cir.1985). It was held that it was error for the ITA not to conduct a § 751 review for the "gap period", the time between the period that was actually reviewed and the tentative determination to revoke. The court in relying on the legislative history of § 751 (19 U.S.C. § 1675(a)) stated that Commerce should always use the most current information available. 776 F.2d at 1032. Since there had been no review within a year of the tentative determination to revoke, this precluded petitioner's access to current review findings in contravention of Congressional intent. While the court in *Freeport* required the ITA to conduct a review during this gap period, the decision has been cited as requiring the most up to date information available be reviewed before a final revocation may be effected. *UST, supra* at ——, 648 F.Supp. at 5. The ITA has an obligation to obtain updated information. *The Timken Co. v. United States,* 10 CIT ——, ——, 630 F.Supp. 1327, 1333 (1986). Re-

gardless of whether or not a request was filed for an administrative review for 1985–1986, it is the ITA's responsibility to properly implement the antidumping laws (*see* n. 2, *supra*).

■ Concededly, the ITA has clearly exceeded the time limits imposed, which provide that within one year of initiation of the review, the Secretary will issue final results. 19 U.S.C. § 1675(a); 19 C.F.R. 353.53a(b)(7). Furthermore, as soon as possible after the preliminary determination to revoke is published, the Secretary shall determine whether final revocation is warranted. 19 C.F.R. § 353.54(f). If it is in fact warranted, the revocation will be effective as of the date on which the tentative determination was published (May 14, 1984).[3] However, while the ITA has failed to timely complete its reviews, it is not precluded from obtaining current data upon which to base its final decision. It has been held that the schedule for completion of § 751 reviews is directory and not mandatory. *Philipp Bros., Inc. v. United States*, 10 CIT at —— ——, 630 F.Supp. at 1323–1324 (no restraint or adverse consequences are affirmatively imposed for the delay), *appeal dismissed* No. 86–1122 (Fed.Cir. July 18, 1986). Therefore, the appropriate action by plaintiff is a suit to enforce the statutory deadlines. *Ameican Permac v. United States*, 10 CIT ——, ——, 642 F.Supp. 1187, 1188 (1986). Nonetheless, in such an action brought in *UST*, the court deferred issuance of the writ of mandamus pending timely compliance with a proposed schedule for completion of the reviews. 10 CIT at —— – ——, 648 F.Supp. at 6. Such a schedule has been submitted in this action and the Court intends to have the ITA abide by these deadlines.

Plaintiffs have cited *Matsushita, et al. v. United States*, 10 CIT ——, 645 F.Supp. 939 (1986), *appeal docketed*, No. 86–1678 (Fed.Cir. Sept. 15, 1986), where the court

enjoined the ITA from conducting any further reviews or revising its request format until it acted on the preliminary determination to revoke. However, the court did not use the traditional four prong analysis and discuss whether, in light of *Freeport Minerals*, plaintiff would be successful as to requiring the ITA to determine final revocation without the benefit of current data.

Plaintiffs further contest the ITA's request for supplemental information for the period 1980–1984 in view of the fact that there was already a review conducted, and where for the 1980–1981 period there were on site verifications, and a preliminary determination of no dumping. Apparently the ITA has issued new questionnaires for this period to conform with the holding in *The Timken Company*, 10 CIT ——, 630 F.Supp. 1327, which involved the ITA's decision to revoke an antidumping finding as to TRBs, the product here in issue. The court found that the methodology employed by the ITA in determining that there were no sales at LTFV was fundamentally flawed in that it had allowed the foreign manufacturers to choose which merchandise was similar to that under review. The ITA had abused its authority in failing to collect adequate home market sales data to make its own determination as to what models were the most similar to those sold in the United States. 10 CIT at ——, 630 F.Supp. at 1338. Defendant-intervenor takes the position that the same erroneous methodology was employed by the ITA in conducting the initial administrative reviews of plaintiffs' TRBs.

■ Plaintiffs respond that in the intervenor's petition for the antidumping investigation for 1985–1986, plaintiffs are not even identified on the list of known importers and manufacturers of TRBs, which accompanied that petition. However, at issue is a § 751 review of T.D. 76–227; the new investigation is irrelevant since Commerce

---

**3.** The Secretary may revoke an antidumping finding upon an application for revocation demonstrating that sales are no longer made at LTFV for two years following the antidumping finding or order. Similarly, the Secretary on

his own initiative may revoke an antidumping finding after three years if he is satisfied there is no likelihood of resumption of sales at LTFV, or sales at LTFV have been eliminated, or changed circumstances exist. § 353.54(b), (c).

specifically stated that it does not cover products subject to the original outstanding antidumping finding in T.D. 76–227. *See* 51 Fed.Reg. 33286 (September 19, 1986). Plaintiffs further claim that they have always provided complete sales listings of all sales in the United States and Japan and that intervenor has never alleged otherwise. Finally, plaintiffs attempt to demonstrate that the ITA is merely requesting resubmission of prior information in a new format rather than new supplemental information.

 If the ITA's previous review was tained due to a manifest error then it may amend its determination. *The Timken Company*, 10 CIT at ——, 630 F.Supp. at 1332; *Melamine Chemicals v. United States*, 8 CIT 105, 106, 592 F.Supp. 1338, 1340 (1984). This principle certainly seems applicable to a situation where no final determination has yet been issued. If in fact the administrative review for 1980–1984 was based on an incorrect analysis as in *Timken*, and these revised questionnaires will achieve remediation, this Court should not interfere. "The public interest is served when agencies act in conformity with a statutory mandate designed to achieve goals inuring to the public benefit". *Hyundai*, 10 CIT ——, at ——, 650 F.Supp. 174, at 177 (1986). There has not been an adequate showing that these questionnaires are unreasonable, unwarranted, or merely a form of harassment. While the ITA cannot be precluded from obtaining this information, it must also be expected to fulfill its obligations in a timely manner. Therefore, the Court incorporates as part of this decision the proposed schedule submitted by the ITA: preliminary results for the review periods 1981–1982; 1982–1983; and 1983–May 14, 1984, to be issued by May 7, 1987; final results as well as a final determination on revocation to be issued by September 30, 1987. The Court directs the ITA, once in receipt of plaintiffs responses, to complete the reviews within a reasonable time of those deadlines.

## CONCLUSION

This Court finds that plaintiffs have not satisfied their burden in demonstrating that irreparable harm will result in the absence of the preliminary injunction, and have failed to adequately show their likelihood of success on the merits. Therefore, plaintiffs' motion is denied. Further, for the above mentioned reasons, defendant's motion to dismiss is also denied. So ordered.