The AD HOC COMMITTEE OF FLORI-
DA PRODUCERS OF GRAY PORT-
LAND CEMENT, Plaintiff,

v.

The UNITED STATES, Defendant.

Slip Op. 94–165.
Court No. 93–02–00102.

United States Court of
International Trade.

Oct. 19, 1994.

King & Spalding, Joseph W. Dorn, Michael P. Mabile, Washington, DC, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Marc E. Montalbine, Washington, DC (Thomas G. Ehr, Import Admin., U.S. Dept. of Commerce, of counsel), for defendant.

**OPINION**

MUSGRAVE, Judge.

In this action, plaintiff, The Ad Hoc Committee of Florida Producers of Gray Portland Cement ("Ad Hoc"), challenges certain aspects of the September 21, 1992 and December 20, 1992 final determinations of foreign market values ("FMV") made by the Department of Commerce, International Trade Administration ("ITA" the "Department" or "Commerce"), pursuant to an agreement to suspend an antidumping investigation of gray portland cement and cement clinker from Venezuela.

*Background*

On May 21, 1991, Ad Hoc filed an antidumping petition on behalf of the United States industry producing gray portland cement and clinker. Commerce initiated an antidumping duty investigation on June 14,

1991. *Notice of Initiation of Antidumping Duty Investigation: Gray Portland Cement and Clinker From Venezuela,* 56 Fed.Reg. 27,496 (1991). On November 4, 1991, after receiving questionnaire responses from Venezolana de Cementos, S.A.C.A. ("Vencemos") and Cementos Caribe, C.A. ("Caribe"), Commerce published its preliminary determination that gray portland cement and clinker from Venezuela were being sold at less than fair value in the United States. *Notice of Preliminary Determination of Sales at Less Than Fair Value: Gray Portland Cement and Clinker From Venezuela,* 56 Fed.Reg. 56,390 (1991).

On December 23, 1991, Commerce and respondents Vencemos and Caribe initiated a proposed agreement to suspend the antidumping investigation pursuant to 19 U.S.C. § 1673c(b)(2).[1] The proposed agreement required the respondents to revise their prices to eliminate sales at less than fair value. In addition, the proposed agreement described the administrative process for monitoring the respondents' compliance with the requirement to eliminate sales at less than fair value. Under this process, the FMV was to be the *constructed value* of the merchandise, as defined in 19 U.S.C. § 1677b(e). Vencemos and Caribe were required to submit constructed value data to Commerce on a quarterly basis using a format and methodology prescribed by Commerce. Based on the information submitted by respondents, Commerce would calculate FMVs that would provide the *benchmark* for respondents' prices *on future sales* to the United States during specified periods.

Pursuant to the suspension agreement, Commerce suspended the antidumping duty investigation and published notice of the suspension in the Federal Register on February 27, 1992. *Gray Portland Cement and Cement Clinker From Venezuela; Suspension of Investigation,* 57 Fed.Reg. 6706 (1992) (hereinafter *"Notice of Suspension"*).

Paragraph E of the suspension agreement provides, beginning July 1, 1992, for release to the "domestic parties" of the quarterly financial information received from the signatories as well as "the results and the methodology of [Commerce's] calculations of its foreign market value." *Notice of Suspension,* at 6708. The suspension agreement also permits parties to submit written comments to Commerce following the release of the FMV calculation and, once during each calendar year, "to request a hearing on issues raised during the proceeding." *Id.*

On February 28, 1992, Commerce issued its determination of final FMVs pursuant to paragraph C.2. of the suspension agreement, based on the respondents' submissions of constructed value data for April 1–September 30, 1991.[2] On July 20, 1992, Commerce issued its determination of final FMVs for the January 1–March 30, 1992 period pursuant to paragraph C.3. of the suspension agreement.[3]

---

**1.** **(b) Agreements to eliminate completely sales at less than fair value or to cease exports of merchandise.**—The administering authority may suspend an investigation if the exporters of the merchandise which is the subject of the investigation who account for substantially all of the imports of that merchandise agree—

(1) to cease exports of the merchandise to the United States within 6 months after the date on which the investigation is suspended, or

(2) to revise their prices to eliminate completely any amount by which the foreign market value of the merchandise which is the subject of the agreement exceeds the United States price of the merchandise.

**2.** Paragraph C.2. of the suspension agreement provides:

For all sales occurring between March 1, 1992, and July 31, 1992, each signatory producer/exporter agrees not to sell its merchandise subject to this Agreement to unrelated purchasers in the United States at prices that are less than its foreign market value, as determined by the Department on the basis of information submitted to the Department on February 3, 1992, and provided to parties not later than February 20, 1992.

*Id.* at 6707.

**3.** Paragraph C.3. of the suspension agreement provides:

For all sales occurring between August 1, 1992, and September 31, 1992, each signatory producer/exporter agrees not to sell its merchandise subject to this Agreement to unrelated purchasers in the United States at prices that are less than its foreign market value, as determined by the Department on the basis of information submitted to the Department on June 1, 1992, and provided to parties not later than July 20, 1992.

*Id.* at 6707.

Ad Hoc filed separate actions before this Court to challenge the FMVs issued on February 28, 1992 and July 20, 1992. *The Ad Hoc Committee Of Florida Producers Of Gray Portland Cement v. United States,* Court No. 92–03–00196; *The Ad Hoc Committee Of Florida Producers Of Gray Portland Cement v. United States,* Court No. 92–08–00560. Commerce filed motions to dismiss each of these actions, asserting that the quarterly calculations were not final determinations reviewable by the Court. Ad Hoc and Commerce stipulated to the dismissal of those actions on December 8, 1992.

On February 17, 1993, Ad Hoc again filed a complaint challenging the September 21, 1992 and the December 20, 1992 calculations made pursuant to paragraph C.4. of the suspension agreement.[4] In its complaint, Ad Hoc requests that the Court require Commerce to recalculate the FMVs used for the quarterly periods beginning October 1, 1992 and January 1, 1993. *Plaintiffs Complaint,* at paragraph 22 & 27. As with Ad Hoc's previous complaints, its current complaint alleges jurisdiction based upon 28 U.S.C. § 1581(i).

Also on February 17, 1993, Commerce published notice in the Federal Register of the opportunity to request an administrative review with respect to the suspension agreement concerning gray portland cement and clinker from Venezuela. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review,* 58 Fed.Reg. 8739 (Feb. 17, 1993). On February 25, 1993, Ad Hoc requested an administrative review of the suspension agreement.

**4.** Paragraph C.4. of the suspension agreement provides:

> For all sales occurring after October 1, 1992, each signatory producer/exporter agrees not to sell its merchandise subject to this Agreement to any unrelated purchaser in the United States at prices that are less than the foreign market value of the merchandise as determined by the Department on the basis of information submitted to the Department not later than the dates specified in section D of this Agreement and provided to parties not later than September 20, December 20, March 20, and June 20 of each year. The foreign market value shall apply to sales occurring during the calendar quarter beginning on the first day of the month following the date the

## Discussion

Commerce argues that these calculations are not final reviewable determinations and that Ad Hoc's request is premature. *Defendant's Memorandum in Support of Motion to Dismiss,* at 7. Commerce argues that the quarterly calculations of FMV pursuant to the suspension agreement are merely interim decisions which would be superseded by an administrative review under 19 U.S.C. § 1675(a). Thus, Commerce asserts that 28 U.S.C. § 1581(i) does not give this Court jurisdiction to grant Ad Hoc the relief it requests. *Id.* at 13.

Ad Hoc argues that Commerce's September 21 and December 20 FMV determinations are final agency actions binding upon all parties. *Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss,* at 12 *et seq.* Ad Hoc argues that these FMV determinations are not among those determinations specifically reviewable under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c). It asserts that the administrative monitoring procedure under which those determinations were made was adopted by Commerce in the exercise of its general authority to enforce the suspension agreement. It was not mandated by any provision of law, and it is wholly independent of the administrative review process established by 19 U.S.C. § 1675(a) for determining compliance with suspension agreements. *Id.* at 19.

As stated above, Ad Hoc argues that this Court has jurisdiction via 28 U.S.C. § 1581(i).[5] 28 U.S.C. § 1581(i) jurisdiction is

Department provides the foreign market value, as stated in this paragraph. *Id.* at 6707–08.

**5.** 28 U.S.C. § 1581(i) states in pertinent part:

> [T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
>
> (1) revenue from imports or tonnage;
>
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> (3) embargoes or other quantitative restrictions on the importation of merchandise for rea-

appropriate only when *no* other remedy is available or when remedies that may be available are shown to be *manifestly inadequate. See e.g. Conoco, Inc. v. United States Foreign–Trade Zones Bd.*, 18 F.3d 1581 (Fed.Cir.1994); *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed.Cir. 1992).

■ This Court has found 28 U.S.C. § 1581(i) jurisdiction in certain situations where administrative remedies necessary to sustain jurisdiction under 28 U.S.C. § 1581(c) had not been completed. The Court has found jurisdiction present over pending administrative reviews alleged to be invalid where 28 U.S.C. § 1581(c) jurisdiction could be unavailable after each succeeding periodic review. *Carnation Enter. Pvt., Ltd. v. United States Dep't of Commerce*, 13 CIT 604, 612, 719 F.Supp. 1084, 1091 (1989). The Court has also found jurisdiction to preclude Commerce from conducting unlawful administrative reviews because appropriate remedies would be inadequate by the time 28 U.S.C. § 1581(c) jurisdiction attached. *Jia Farn Manufacturing Co. v. Secretary of Dep't of Commerce*, 17 CIT ——, ——, 817 F.Supp. 969, 971–72 (1993); *Asociacion Colombiana de Exportadores de Flores v. United States*, 13 CIT 584, 585–88, 717 F.Supp. 847, 849–51 (1989). Thus, in the case of actions potentially reviewable under 28 U.S.C. § 1581(c), 28 U.S.C. § 1581(i) review is appropriate where eventual standing may be speculative, or the opportunity for full relief would be lost by awaiting the final determination. *See Techsnabexport, Ltd. v. United States*, 16 CIT 420, 423–24, 795 F.Supp. 428, 432–34 (1992); *Nissan Motor Corp. In U.S.A. v. United States*, 10 CIT 820, 822, 651 F.Supp. 1450, 1453 (1986); *see also Nakajima All Co. Ltd. v. United States*, 12 CIT 585, 592, 691 F.Supp. 358, 364 (1988) (requiring Commerce to complete & publish final results in an annual § 751 review); *UST, Inc. v. United States*, 10 CIT 648, 651, 648 F.Supp. 1, 4 (1986) ("it is not too difficult to imagine circumstances where a possible recalcitrant ITA might determine never to complete a section 751 review simply to escape judicial scrutiny"), *aff'd*, 831 F.2d 1028 (Fed.Cir.1987).[6]

■ As the cases above demonstrate, this case manifests precisely the sort of circumstance to which 28 U.S.C. § 1581(i) applies. The challenged FMV determinations are not part of an administrative review or any other Commerce proceeding that will ultimately lead to a determination reviewable under 19 U.S.C. § 1516a(a)(2)(B)(iii). Moreover, the FMV determinations are final and binding on all parties with respect to the FMVs for the periods covered by the determinations. The FMV determinations are not subject to any further action to be considered by Commerce under the suspension agreement. There is no provision in the suspension agreement which affects the finality of the FMV determinations. Paragraph D.3. of the suspension agreement states only that:

> *Special Adjustment of Foreign Market Value.* If the Department determines that the foreign market value it determined for a previous quarter was erroneous because the reported data for that period were inaccurate or incomplete, or for any other reason, the Department may adjust foreign market value *in a subsequent period or*

sons other than the protection of the public health or safety; or

   (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection. . . .

28 U.S.C. § 1581(i) (1988).

**6.** *Cases cited by Commerce in which the court has declined to exercise 28 U.S.C. § 1581(i) jurisdiction over issues involving the administration of the unfair trade laws are distinguishable, essentially because they involve ordinary interim decision-making fully reviewable at the conclusion of the proceedings. See, e.g., MacMillan Bloedel Ltd. v. United States*, 16 CIT 331, 331–33, 1992 WL 107336 (1992) (ordinary interim antidumping decisions unreviewable until proceedings are completed); *Smith Corona Corp. v. United States*, 13 CIT 599, 602–03, 718 F.Supp. 63, 66–67 (1989) (finding no 28 U.S.C. § 1581(i) jurisdiction to review agency decision refusing to suspend liquidation of entries because 28 U.S.C. § 1581(c) review was adequate); *Koyo Seiko Co. v. United States*, 13 CIT 461, 463–64, 715 F.Supp. 1097, 1099–1100 (1989) (holding no 28 U.S.C. § 1581(i) jurisdiction to review agency decision denying additional period for comment); *PPG Indus., Inc. v. United States*, 2 CIT 110, 111–13, 525 F.Supp. 883, 885 (1981) (finding no 28 U.S.C. § 1581(i) jurisdiction to review agency's refusal to hold disclosure conference).

*periods,* unless the Department determines that section G of this Agreement applies.

(emphasis added). By contrast, an administrative review cannot prospectively monitor the elimination of dumping, but only can result in an *after-the-fact* determination.

Additionally, a review determination would not be based upon the same methodology for determining FMVs that was relied upon in the FMV determinations at issue. The suspension agreement required the FMV determinations to be based on *constructed value* as defined in 19 U.S.C. § 1677b(e). Paragraph J.2. of the suspension agreement states:

> *Foreign Market Value*—means the *constructed value* of the merchandise, as determined by the Department under section 773(e) of the Act, except in the interim period, as noted in item C.1. above. In calculating foreign market value, the Department may also consider, to the extent it deems appropriate, information submitted by producers/exporters regarding projected differences in production costs in the quarter in which the information is submitted resulting from factors such as anticipated changes in production yield, changes in production process, changes in productions quantities or changes in production facilities.

(emphasis added). In contrast, the FMVs calculated by Commerce in its preliminary determination in the original antidumping investigation were based on *home market sales of cement* and *third country sales of clinker.* Commerce's calculation of FMV would not be based on the cost of manufacture, general expense, and profit data it relied upon in its constructed value analysis. As a consequence, the administrative review would not incorporate the substance of the contested FMV determinations.

Even if Commerce based FMV on constructed value in the administrative review proceeding, it is apparent that Commerce would use data in addition to the April–September 1992 data at issue in this case. Commerce regulations pertaining to an administrative review provides in pertinent part:

> (b) *Period under review.* (1) Except as provided in paragraph (b)(2) of this section, an administrative review under paragraph (a) of this section normally *will cover, as appropriate, entries, exports, or sales of the merchandise during the 12 months immediately preceding the most recent anniversary month.*
>
> (2) For requests received during the first anniversary month after publication of an order or suspension of investigation, the review under paragraph (a) of this section will cover, as appropriate, entries, exports, or sales during the period from the date of suspension of liquidation under this part or suspension of investigation to the end of the month immediately preceding the first anniversary month.

19 C.F.R. § 353.22(b) (emphasis added). As a consequence, Commerce would compare respondents' U.S. sale prices and constructed values during the February 1992—January 1993 period covered by the administrative review. The FMV determinations at issue constitute only a portion of the data relevant to the administrative review.

Furthermore, even if an administrative review could encompass the contested entries, the remedy would be inadequate. First, Ad Hoc's only effective guarantee that the respondents will comply with the requirement that they eliminate their sales at less than fair value is the threat of civil penalties. An intentional violation of the suspension agreement is subject to the same civil penalty that is imposed for customs fraud under 19 U.S.C. § 1592(a). *See* 19 U.S.C. § 1673c(i)(2). Since the benchmark prices for respondents' future sales to the U.S. are established by Commerce, the respondents can easily avoid an intentional violation of the suspension agreement by adhering to the benchmark prices in making their U.S. sales. That intent could not be established, however, if respondents are adhering to the artificially low benchmarks resulting from Commerce's methodological errors in the FMV determinations.

Second, liquidation of the subject entries is not suspended during the period of the suspension agreement. Accordingly, the failure to eliminate sales at less than fair value will go uncured unless judicial review is immediately available. This is due to the fact that

an administrative review acts prospectively. Thus, a review under 19 U.S.C. § 1675(a) would not effect the entries that have already been liquidated.

### Conclusion

Recourse to the administrative review process pursuant to 19 U.S.C. § 1675(a) is obviously ineffective at resolving the issues in this case. The contested FMV determinations will escape judicial review entirely if the Court does not exercise jurisdiction under 28 U.S.C. § 1581(i). This action is precisely the sort of case contemplated by Congress when it provided this Court broad residual jurisdiction under 28 U.S.C. § 1581(i) as was affirmed by the Court of Appeals for the Federal Circuit in *Conoco, Inc. v. United States Foreign–Trade Zones Bd.,* 18 F.3d 1581 (Fed.Cir.1994). Ad Hoc lacks any meaningful avenue for obtaining relief other than 28 U.S.C. § 1581(i). Accordingly, Commerce's motion to dismiss is denied.