**NAKAJIMA ALL CO., LTD., and Nakajima U.S.A., Inc., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**Smith–Corona Corp., Amicus Curiae.**

**Court No. 88–02–00079.**

United States Court of International Trade.

March 3, 1988.

McDermott, Will & Emery (R. Sarah Compton and Kurt J. Olson, on the motions and the briefs; Patrick J. Cumberland, Washington, D.C., on the briefs), Patton, Boggs & Blow (Michael D. Esch, Washington, D.C., on the motions), of counsel, for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (M. Martha Ries, on the motions), and Office of the Chief Counsel for Intern. Trade, U.S. Dept. of Commerce (Lisa B. Koteen, Washington, D.C., on the motions, of counsel) for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, and James R. Cannon, Jr., Washington, D.C., for amicus curiae.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

Plaintiffs filed their summons and complaint and moved for an order to show cause from this Court seeking to expedite this action by shortening defendant's time to answer, accelerating discovery, and setting an early trial date for a trial on the merits. Plaintiffs' action prays for a writ of mandamus to be issued directing the defendant, United States Department of Commerce, International Trade Administration (Commerce), to complete and publish various preliminary and final administrative § 751 review (751 review) results pursuant to § 751 of the Tariff Act of 1930, as amended by the Trade and Tariff Act of 1984, 19 U.S.C. § 1675 (1987) in Commerce's antidumping investigation of portable electric typewriters from Japan.

On the return date, February 11, 1988, in open court, the Court directed the defendant to propose a schedule as to when the various section 751 reviews would be completed, directed the parties to confer and submit to the Court a proposed stipulation of facts, and continued the hearing until February 19, 1988. Thereafter, the plaintiffs withdrew their motion for an accelerated discovery and a trial *de novo*. On February 19, 1988, in open court, the Court

reserved its decision on plaintiffs' action for a writ of mandamus and continued the case with certain requirements. Decision to grant applicant-intervenor's motion to intervene was also reserved by the Court but the Court granted applicant-intervenor amicus curiae status.

## FACTS

Plaintiffs Nakajima All Co., Ltd. and Nakajima U.S.A., Inc. (plaintiffs) filed this action for a writ of mandamus directing Commerce to complete and publish four preliminary and final 751 administrative review results regarding Commerce's antidumping investigation of portable electric typewriters from Japan. Plaintiffs also filed a motion for an order to show cause why this action should not be expedited.

At issue are four annual 751 reviews of an antidumping investigation and order concerning portable electric typewriters (PETS) produced and exported from Japan. The antidumping order has been in effect since May of 1980. Commerce has conducted eight 751 reviews since the order, completing and publishing the preliminary and final results of only the first three. The 751 reviews at issue (the fourth, fifth, sixth and seventh) involve sales going back to 1982. The parties have submitted to the Court a proposed stipulation of facts concerning the several 751 reviews at issue.

These facts are substantially set forth as follows:

Nakajima All Co., Ltd. is an exporter of PETS from Japan. Nakajima U.S.A., Inc. is the United States importer of PETS exported by Nakajima All Co., Ltd. from Japan.

On May 9, 1980, Commerce published its notice of an antidumping order issued for portable electric typewriters from Japan. Plaintiffs' merchandise was subject to this order. *Portable Electric Typewriters From Japan; Antidumping Duty Order*, 45 Fed.Reg. 30618 (1980). Subsequent to this order, eight different 751 reviews (Q1 through Q8) have been conducted on the subject merchandise sold or entered into the U.S. covering time periods from January 4, 1980 to April 30, 1987. The only preliminary and final 751 review results to have been completed and published up to the date of February 19, 1988 have been Q1, Q2 and Q3.[1] These are not at issue in this action.

Commerce is still conducting the remaining 751 reviews (Q4, Q5, Q6, Q7 and Q8), and has not published or completed any of the preliminary or final results for these reviews as of February 19, 1988. For the sake of convenience, the following table sets out the relevant chronology of the 751 reviews:

1. As stipulated by the parties, the following constitutes the relevant chronology of events involving these three 751 reviews:

Q1—Commerce published its intent to initiate review of the antidumping order for the subject merchandise on March 16, 1981. *Intent to Conduct Administrative Review of Certain Antidumping Findings and Orders and Countervailing Duty Orders*, 46 Fed.Reg. 16921 (1981). The preliminary results of the first 751 review, covering the time period January 4, 1980 through April 30, 1980, were published on April 24, 1981. *Portable Electric Typewriters From Japan; Preliminary Results of Administrative Review of Antidumping Duty Order*, 46 Fed.Reg. 23278 (1981). The final results were published on August 2, 1982. *Portable Electric Typewriters From Japan; Final Results of Administrative Review Of Antidumping Duty Order*, 47 Fed.Reg. 33306 (1982).

Q2—The second 751 review covering the time period May 1, 1980 through April 30,

1981, was initiated on August 2, 1982. *Id.* The preliminary results were published on October 5, 1982. *Portable Electric Typewriters From Japan; Preliminary Results of Administrative Review of Antidumping Duty Order*, 47 Fed.Reg. 43992 (1982). The final results were published on September 9, 1983. *Portable Electric Typewriters From Japan; Final Results of Administrative Review of Antidumping Duty Order*, 48 Fed.Reg. 40761 (1983).

Q3—The third 751 review was initiated no later than January of 1983 and covered the time period May 1981 through April 1982. The preliminary results were published on July 1, 1986. *Portable Electric Typewriters From Japan; Preliminary Results of Antidumping Duty Administrative Review*, 51 Fed.Reg. 23804 (1986). The final results were published on January 14, 1987. *Portable Electric Typewriters From Japan; Final Results of Antidumping Duty Administrative Review*, 52 Fed.Reg. 1504 (1987).

**Dates of Actions Taken**

| Review Period | Initiation of Admin. Review Published | Latest Nakajima Data Submitted to Commerce | Preliminary Results Published | Final Results Published |
|---|---|---|---|---|
| 1/4/80–4/30/80 Q1 | Unknown | N/A | 4/24/81 | 8/2/82 |
| 5/1/80–4/30/81 Q2 | 8/2/82 | N/A | 10/5/82 | 9/9/83 |
| 5/1/81–4/30/82 Q3 | 1/83 | N/A | 7/1/86 | 1/14/87 |
| 5/1/82–4/30/83 Q4 | 4/18/83 | 4/30/87 | None | None |
| 5/1/83–4/30/84 Q5 | 6/22/84 | 4/30/87 | None | None |
| 5/1/84–4/30/85 Q6 | 7/9/86 | 4/30/87 | None | None |
| 5/1/85–4/30/86 Q7 | 6/23/86 | 4/30/87 | None | None |
| 5/1/86–4/30/87 Q8 | 6/19/87 | 11/13/87 | None | None |

Plaintiffs' exhibit #1, *Nakajima All,* Court No. 88–02–00079.

The fourth 751 review, Q4, covers the time period May 1982 through April 1983 and was initiated by sending a questionnaire to plaintiffs on April 18, 1983. Commerce indicated the final results of this review would be issued on July 31, 1987. *Initiation of Antidumping Duty Administrative Reviews,* 51 Fed.Reg. 24883 (1986).

The fifth 751 review, (Q5), covered the time period May 1983 through April 1984 and was initiated by Commerce sending a questionnaire to plaintiffs on June 22, 1984. This review was reinitiated on July 9, 1986. *Id.* Commerce stated the final results would be issued on July 31, 1987. *Id.*

The sixth administrative review, (Q6), covered the time period May 1984 through April 1985 and was initiated on July 9, 1986. *Id.* Commerce stated the final results would be issued on July 31, 1987. *Id.*

The seventh administrative review, (Q7), covered the time period May 1985 through April 1986, and was initiated on June 23, 1986. *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 51 Fed.Reg. 22843 (1986). Com-

merce stated that it would issue the final results of this review by June 30, 1987. *Id.*

On December 12, 1986, Commerce requested supplemental sales and cost of production information from plaintiffs for Q4, Q5, Q6 and Q7. On January 9, 1987, plaintiffs submitted to Commerce the requested supplemental questionnaire responses for Q4, Q5, Q6 and Q7. On February 2, 1987 Commerce requested additional supplemental information from plaintiffs regarding sales responses filed in 1983 and 1984 for Q4 and Q5. Plaintiffs submitted this information on February 17, 1987.

Commerce last sought information from plaintiffs with regard to the pending 751 reviews in March of 1987. Thereafter, plaintiffs submitted the requested information on April 30, 1987. Plaintiffs' merchandise at issue has been subjected to a 16.40% cash deposit rate since January 14, 1987.

The eighth administrative review, (Q8), covered the time period May 1986 through April 1987 and was initiated on June 19, 1987. *Initiation of Antidumping and Countervailing Duty Administrative Reviews; Construction Castings From Brazil, etc.,* 52 Fed.Reg. 23330 (1987).

On July 17, 1987, plaintiffs advised Commerce of a clerical error regarding a difference in merchandise adjustment. Commerce, since the initiation of the original antidumping investigation, has conducted separate reviews for individual or several respondents.

At the first hearing, held in open court on February 10, 1988, defendant asserted Commerce would be completing the preliminary results for Q4, Q5, Q6, and Q7 by the end of March, 1988. Defendant also asserted Commerce intended to complete the final results for Q4, Q5, Q6 and Q7 by the end of June 1988. After all parties and *amicus curiae* had given their arguments, the Court directed the parties to stipulate as to the relevant facts of the case and submit a copy of the same to the Court. Any facts in dispute, the Court continued, should be submitted separately by each party. *Amicus curiae* was given leave to participate in such submissions. The Court also requested defendant to submit a proposed schedule to the Court as to when Commerce expected to complete and publish the preliminary and final results of the subject reviews (Q4–Q7).

The Court also reserved decision on applicant-intervenor's motion to intervene and the Court granted applicant-intervenor *amicus curiae* status in the case.

The Court continued the action until February 19, 1988, when all participants were directed to appear in open court. Plaintiffs thereafter withdrew their application to expedite discovery and for a trial on the merits.

On February 19, 1988, the parties submitted their proposed stipulation of facts. Defendant also submitted "Second Declaration of Timothy N. Bergen" to the Court. The declaration was that of the Director of the Office of Compliance of the International Trade Administration, Commerce, setting forth the proposed schedule for the completion of the subject 751 reviews. Mr. Bergen averred the preliminary results of the reviews at issue (Q4–Q7) would be completed by April 29, 1988. Mr. Bergen's declaration also set forth a report on the current status of the 751 reviews.

In open court on February 19, 1988, further argument by the parties was heard by the Court. It appears that concerning the 751 reviews in question (Q4–Q7) there are some factual issues and information encountered by Commerce that are germane to all these reviews and have been considered for all the reviews (Q4–Q7). Other issues and information considered in these reviews are applicable only to each separate review, especially regarding the comparison of models of the subject merchandise.

After all arguments were heard, the Court held it had jurisdiction in this matter and directed Commerce to accelerate, if possible, its schedule in completing the reviews, but to conduct their investigations with its usual level of competency and thoroughness. The Court also reserved its decision on plaintiffs' request for a writ of mandamus and continued the action. The parties were directed to submit bi-monthly reports and to appear in open court every month until the completion of the subject 751 reviews. The Court also reserved its decision on applicant-intervenor's motion to intervene and continued applicant-intervenor's *amicus curiae* status.

## DISCUSSION

■ Plaintiffs have filed their complaint seeking a writ of mandamus directing Commerce to complete and publish the preliminary and final 751 review results concerning Japanese portable electric typewriters. Plaintiffs bring their action pursuant to the All Writs Act, 28 U.S.C. § 1651(a) and section 10(e)(1) of the Administrative Procedure Act, 5 U.S.C. § 706(1) and claim the Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(i).

Defendants argue plaintiffs' action is reviewable under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c), therefore resort to jurisdiction under section 1581(i) is impermissible as set forth in case law and the statutes. Defendants state that because plaintiffs' jurisdictional status lies under section 1516a and 1581(c), these provisions "represent the exclusive means" by which plaintiffs must challenge Commerce's actions.

Defendant further articulates that although § 1581(i) jurisdiction can be invoked in a situation where the remedy provided for under § 1581(c) would be "manifestly inadequate," citing *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed.Cir.1987), plaintiffs have failed to demonstrate such showing here.

The general jurisdiction of this Court lies under 28 U.S.C. § 1581, and the Court has exclusive jurisdiction over specific types of civil actions pursuant to § 1581 subsections (a)-(h). *Miller & Co. v. United States*, 824 F.2d 961 (Fed.Cir.1987). Concerning these specific jurisdictional grounds, it has been observed:

> [W]here Congress has prescribed in great detail a particular track for a claimant to follow, in administrative or judicial proceedings, and particularly where the claim is against the United States or its officials in their official capacity, the remedy will be construed as exclusive without a specific statement to that effect.

*National Corn Growers Association v. James Baker*, 840 F.2d 1547, 1558, (Fed. Cir.1988).

Section 1581(i)[2] has been recognized as the "residual jurisdiction" subsection. It "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Miller & Co.*, 824 F.2d at 963. In situations where a cause of action might arise where the contested agency decision occurs between the final administrative determination and the administrative 751 review, a claimant may be able to file its action under the court's broad residual jurisdiction under § 1581(i). *UST, Inc. v. United States*, —— CIT ——, ——, 648 F.Supp. 1, 4 (1986); *aff'd on other grounds*, 831 F.2d 1028 (Fed.Cir.1987); *Ceramica Regiomontana, S.A. v. United States*, 5 CIT 23, 27–28, 557 F.Supp. 596, 600 (1983). More relevant to the point, it has been held this Court has jurisdiction, under § 1581(i), to hear a cause of action arising from Commerce's *extended* delays in completing and publishing its 751 review results after it has published its initiation of the reviews. *UST, Inc.*, —— CIT at ——, 648 F.Supp. at 4.

In the present action, defendant claims this action is reviewable under 19 U.S.C. 1516a and 28 U.S.C. 1581(c). But, as plaintiffs aptly point out, the necessary prerequisite to the initiation of an action under these sections is the issuance of a final determination. The instant case does not contain such circumstances. As clearly evinced in the facts above, the challenged agency action (or lack of action) is the undue delays Commerce has experienced between its initiation of the subject 751 reviews, and the completion and publication of the preliminary and final results of those reviews. Such challenged actions are not provided for under § 1516a and § 1581(c) or any other subsection of 1581. Since Commerce's challenged action lies "outside the scope of any administrative proceeding which ultimately would result in a determination reviewable under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c), obviously this is the circumstance in which Congress intended that the Court's residual jurisdiction could be invoked."[3] *Ceramica*

---

**2.** Section 1581(i) provides as follows:

(1) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this *section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

28 U.S.C. § 1581(i) (1986).

**3.** The Court of Customs and Patent Appeals commented on § 1581(i) in light of the congressional history:

[W]e agree with the Court of International Trade that section 516a is *not* the *"exclusive*

*Regiomontana, S.A. v. United States,* 5 CIT 23, 26, 557 F.Supp. 596, 600 (1983).

 In situations where judicial action is needed as a remedy to enforce or encourage compliance with statutory deadlines, i.e., where Commerce exceeds the publication deadline in its review proceedings pursuant to 19 U.S.C. § 1675, such remedy is available by virtue of this Court's jurisdiction under § 1581(i). *American Permac, Inc. v. United States,* — CIT —, —, 642 F.Supp. 1187, 1192 (1986). It is clear the Court may exercise its jurisdictional powers over this action pursuant to 28 U.S. C. § 1581(i). *See, UST, Inc.,* — CIT —, 648 F.Supp. 1. Accordingly, this Court need not address the jurisdictional claims postulated by plaintiffs under 28 U.S.C. § 1651, the All Writs Act.[4] The Court observes, nevertheless, the All Writs Act is in aid of jurisdiction but does not confer jurisdiction independently. The Court may employ the remedies under this Act in aid of its equity power, but only when an independent source of jurisdiction exists.

Concerning plaintiff's request for a writ of mandamus, the Court recognizes this is "an extraordinary equitable remedy which should be employed to compel the performance of a ministerial duty specifically enjoined by law where performance has been refused, and no meaningful alternative remed[y] exist[s]." *Id.* — CIT at —, 648 F.Supp. at 5.

remedy for all grievances arising from the administration of the antidumping law." A possible conflict between sections 1581(i) and 516a was foreseen by Congress and specifically addressed:

This section [1581(i)] granted the court jurisdiction over those civil actions which arise directly out of an import transaction and involve one of the many international trade laws. The purpose of this section was to eliminate the confusion which currently exists as to the demarcation between the jurisdiction of the federal district courts and the Court of International Trade. This language made it clear that all suits of this type are properly commenced only in the Court of International Trade and not in a district court. This language made it clear that all suits of this type are properly commenced only in the Court of International Trade and not in a district court. Thus, the Committee did not intend to create any new causes of action, but merely to designate definitively the appropriate forum.

 \* \* \* \* \* \*

Subsection (i) is intended only to confer subject matter jurisdiction upon the court, and not to create any new causes of action not founded on other provisions of law.

 \* \* \* \* \* \*

As in the case of subsection (a) of proposed 1581, it is the intent of the Committee that the Court of International Trade not permit subsection (i), and in particular paragraph (4), to be utilized to circumvent the exclusive method of judicial review of those antidumping and countervailing duty determinations listed in section 516A of the Tariff Act of 1930 (19 U.S.C. § 1516a), as provided in that section. Since subsection (i) merely confers jurisdiction on the court and does not create any new causes of action, H.R. 7540 does not change the rights of judicial review which exist under section 516A.

 \* \* \* \* \* \*

*However, subsection (i), and in particular paragraph (4), makes it clear that the court is not prohibited from entertaining a civil action relating to an antidumping or countervailing duty proceeding so long as the action does not involve a challenge to a determination specified in section 516A of the Tariff Act of 1930.* [Emphasis supplied.]

It is apparent from this legislative history that Congress envisioned occasions when an aspect of an antidumping duty determination might fall within the court's jurisdiction under section 1581(i). The Customs Regulations indicate that the contents of an antidumping duty determination are multifaceted and that the "factual findings and legal conclusions upon which the determination is based" comprise only one aspect of the determination. Thus, unless there is an express factual finding or legal conclusion which respect to the scope of the antidumping duty order ("description of the merchandise involved"), section 516a would not preclude an action based on section 1581(i).

*Royal Business Machines, Inc. v. United States,* 69 CCPA 61, 73–74, 669 F.2d 692, 701–702 (1982) (footnotes omitted).

4. Interestingly, defendant does not dispute this Court would have jurisdiction to compel agency action that has been unreasonably delayed under the All Writs Act, as long as an independent source of the Court's jurisdiction exists, but interjects the present delays in the completion and publication of the preliminary and final results of the subject 751 administrative reviews have been justified and not unreasonable. Although this Court reserves such decision, it has been noted by both this Court and the Court of Appeals for the Federal Circuit that delays less lengthy than those at issue have been a source of serious concern. *See, UST, Inc. v. United States,* 831 F.2d 1028 (Fed.Cir.1987); *UST, Inc. v. United States,* — CIT —, —, 648 F.Supp. 1, 6 (1986).

Defendant maintains the issuance of a writ of mandamus compelling Commerce to complete and publish the overdue preliminary results and administrative 751 reviews prior to their completion is unwarranted and would be an interference of this Court in the agency's exercise of its discretionary duties in conducting and finalizing the results of administrative reviews. Defendant cites *Philipp Brothers v. United States*, —— CIT ——, 630 F.Supp. 1317 (1986), as supporting its proposition "the time stated [12 months] in 19 U.S.C. § 1675(a) is directory and not mandatory, and the failure to complete a review on time does not invalidate the review process." Defendant's Memorandum in Response to Plaintiffs' Order to Show Cause and in Support of Defendant's Motion to Dismiss at 25, *Nakajima All Co., Ltd. v. United States*, Court No. 88–02–00079.[5] Defendant also contends plaintiffs have not demonstrated good cause to justify the issuance of a writ of mandamus and compel the expedition of this case.

 As mentioned above, the Court recognizes the concern it has for the ques-

tionable delays experienced by defendant in attempting to complete its administrative 751 reviews. The Court is cognizant these seemingly unexplained delays are a source of frustration, uncertainty, and expenditure of resources for plaintiffs. The Court also recognizes the need for Commerce to arrive at its determinations with the degree of thoroughness and competency expected of that agency. While the agency does have discretionary power in the administration of its procedures, Commerce may not dictate an arbitrary time schedule contrary to the intent of Congress to have these reviews proceed with expedition. A reasonable time schedule must be employed in these instances. Mandamus is an extraordinary remedy used when no meaningful alternative is available. Since defendant has indicated to the Court it will complete the outstanding 751 reviews with alacrity, it does not appear to the Court that it is necessary to issue a writ of mandamus at this time. The Court, therefore, reserves its decision on whether or not to issue a writ of mandamus, denies plaintiffs' application to require defendant to respond to

---

**5.** Although reserved for decision, this Court notes *Philipp* addressed a plaintiff's argument that:

> the merchandise at issue should [have been] liquidated by operation of law [19 U.S.C. § 1504(a) (1982 & Supp.1985)] at the rate [claimed] by plaintiff when it was entered because Customs failed to complete the annual review within the statutory deadline of twelve months.... [A]lthough the liquidation in this case was originally suspended for the period review, ... [plaintiff argued] the suspension automatically terminated at the end of the twelve-month period allowed for the review. Once a suspension terminates, an entry is liquidated within ninety days."

*Philipp Bros., Inc. v. United States*, —— CIT ——, ——, 630 F.Supp. 1317, 1323 (1986), *appeal dismissed*, No. 86–1122 (Fed.Cir. July 18, 1986). The Court went on to state:

> In several other contexts courts have recognized that statutory time period are directory, as opposed to mandatory, when no restraint is affirmatively imposed on the doing of the act after the time specified and no adverse consequences are imposed for the delay.
>
> \* \* \* \* \* \*
>
> As discussed above, the statute [§ 1504] in question in this case does not purport to restrain ITA from acting after the twelve-month

period has passed. The more problematic issue is whether the statute imposes the adverse consequence for the delay, which plaintiff seeks to have imposed on ITA. The Court of Appeals for the Federal Circuit has noted "that both § 1504 and the provisions respecting countervailing duties, such as § 1675(a), were enacted as in *pari materia,* both being amendments to ... the Tariff Act of 1930, and therefore a legislative intent to have them work harmoniously together, and for neither to frustrate the other ... is very much to be inferred." *Florsheim,* [*Shoe Co. v. United States*], 748 F.2d [1560] at 1565 [Fed.Cir.1984] (discussing 19 U.S.C. §§ 1504 and 1675(a)). Although these two provisions are to be read in tandem, and the suspension is to be implied, there is nothing in the statute or legislative history that compels the conclusion that the implied suspension automatically terminates at the close of the twelve-month period specified in section 751. Thus, in this situation, the court is unable to conclude that the statute imposes a penalty of deemed liquidation for the delay. Although ITA's failure to comply with the statutory time limit is not condoned by this court, this failure to act in a timely manner did not deprive ITA of jurisdiction to complete the section 751 review.

*Id.* —— CIT at ——, 630 F.Supp. at 1323–1324. It appears the relevant language in *Philipp* does not necessarily support defendant's proposition.

the complaint on an accelerated timetable and for a hearing on the merits, and orders this action shall be continued until such time as the necessary procedures to complete the reviews have been followed. The Court directs that the parties comply with the following schedule:

(1) Defendant agrees and indicates it can complete its preliminary administrative review results for Q4–Q7 by April 29, 1988, pursuant to the declaration of Commerce's Director of Office Compliance for Import Administration, filed February 19, 1988, with this Court. If any difficulty is experienced by defendant in meeting this deadline, defendant shall immediately contact and inform this Court and the parties involved.

(2) All parties shall render a status report, concerning the progress of the 751 reviews, to the Court on February 29, 1988 and then render additional reports every two weeks following the first report until the resolution of this action. *Amicus curiae* may also participate and submit its report.

(3) Respective parties shall exchange copies of the above status reports at least 24 hours in advance of filing with the Court. The Court encourages the submission of a jointly filed consensual status report.

(4) All parties shall appear in open court at the United States Court of International Trade, in New York City, every thirty days, beginning and including March 25, 1988 at 10:30 a.m. to report to this Court the status of the action at bar.

(5) Commerce is directed to make every effort to accelerate, within reasonable bounds, its time frame in completing the preliminary and final results of its administrative 751 reviews, exercising Commerce's usual thoroughness and competency.

Concerning applicant-intervenor's motion to intervene, it is within the discretionary powers of this Court, pursuant to rule 24(b) of the Rules of this Court, to reserve decision on this motion and to grant applicant-intervenor *amicus curiae* status in this action.

This Court's order will be entered accordingly.