**NAKAJIMA ALL CO., LTD., and Nakajima U.S.A., Inc., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**Smith–Corona Corp., Defendant–Intervenor.**

**Court No. 88–02–00079.**

United States Court of International Trade.

June 22, 1988.

---

McDermott, Will & Emery, (R. Sarah Compton and Kurt J. Olson, on the motions and the briefs; Patrick J. Cumberland, Washington, D.C., on the briefs), for plaintiffs.

Patton, Boggs & Blow, (Michael D. Esch, Washington, D.C., on the motions) of counsel for plaintiffs.

John R. Bolton, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, (M. Martha Ries, on the motions); and Office of the Chief Counsel for Intern. Trade, U.S. Dept. of Commerce (Lisa B. Koteen, Washington, D.C., of counsel on the motions) for defendant.

Stewart and Stewart, (Eugene L. Stewart, Terence P. Stewart, and James R. Cannon, Jr., Washington, D.C., on the motions and the briefs) for defendant-intervenor.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

Plaintiffs filed their action requesting, *inter alia*, a writ of mandamus to be issued directing the defendant, United States Department of Commerce, International Trade Administration (Commerce), to complete and publish the results of various preliminary and final administrative § 751 reviews (751 reviews) pursuant to § 751 of the Tariff Act of 1930, as amended by the Trade and Tariff Act of 1984, 19 U.S.C. § 1675 (1987). The 751 reviews at issue are four separate reviews covering the following time periods: 5/1/82—4/30/83 (Q4); 5/1/83—4/30/84 (Q5); 5/1/84—4/30/85 (Q6); and 5/1/85—4/30/86 (Q7). The reviews at issue covered Commerce's antidumping investigation of portable electric typewriters (PETs) from Japan.

On the return date, February 11, 1988, in open court, the Court directed the defendant to propose a schedule as to when the various section 751 reviews would be completed, directed the parties to confer and submit to the Court a proposed stipulation of facts, and continued the hearing until February 19, 1988. On February 19, 1988, in open court, the Court reserved its decision on plaintiffs' action for a writ of mandamus and continued the case with certain requirements. *See Nakajima All Co., Ltd. v. United States*, —— CIT ——, ——, 682 F.Supp. 52, 60 (1988), *appeal docketed*, No. 88–1430 (Fed.Cir. May 19, 1988). After further delays, Commerce published the preliminary results of the 751 reviews at issue (Q4–Q7) on June 3, 1988. The Court now exercises its continued jurisdiction over the matter and directs Commerce to complete the final results of the 751 reviews, Q4–Q7, by October 15, 1988.

## FACTS

Plaintiffs Nakajima All Co., Ltd. and Nakajima U.S.A., Inc. (plaintiffs) filed this action for a writ of mandamus directing Commerce to complete and publish four preliminary and final 751 administrative review results regarding Commerce's antidumping investigation of portable electric typewriters from Japan. Plaintiffs also filed a motion for an order to show cause why this action should not be expedited. Plaintiffs shortly thereafter withdrew their motion for an accelerated discovery and a trial *de novo*.

At issue are four annual 751 reviews of an antidumping investigation and order concerning portable electric typewriters (PETS) produced and exported from Japan. The antidumping order has been in effect since May of 1980. Commerce has conducted eight 751 reviews since the order, completing and publishing the preliminary and final results of only the first three. The 751 reviews at issue (the fourth, fifth, sixth and seventh) involve sales covering

the years 1982 through 1986. The parties submitted to the Court a proposed stipulation of facts concerning the several 751 reviews at issue. The Court notes those facts as well as the Court's further recitation of other relevant events are set forth in *Nakajima All*, 682 F.Supp. 52 and need not be further repeated.

The Court issued its Slip Opinion and Order, *Nakajima All, id.*, on March 3, 1988. The Court, in its Order, directed the parties to submit periodic status reports concerning the proceedings involved with the completion of the preliminary results. The Court also directed the parties to appear periodically before the Court to address the status of the proceedings.

Defendant, in its status reports, complained to the Court of the burden it perceived Commerce had to bear in completing the status reports and conferring with counsel pursuant to those chores. Plaintiff continued to complain of the delays in the completion of the review results and repeatedly requested the Court to issue a writ of mandamus to compel Commerce to complete the preliminary and final results of the 751 reviews.

On May 26, the Court held a telephone conference with all the parties concerning the status of the case. Noting defendant's dissatisfaction with the Court's order of March 3, 1988,[1] the Court observed:

[The Court] was under the impression that this proceeding that had been adopted or this procedure that had been adopted was designed to be helpful to the government, the amicus and to the plaintiffs. And, it is in that context that [the Court] adopted this particular procedure with what [the Court] anticipated was to be the cooperation of counsel on all sides in order to expedite the Department of Commerce's ability to get these proceedings completed.

Suffice it to say, [the Court] will not permit the Court to be the administrative agency nor is the Court interested in

being involved in impeding the administrative process.

Transcript of Telephone Conference at 11, May 26, 1988, *Nakajima All* (Transcript). The Court concluded with the following:

In addition to that, insofar as the order coming from the Slip Op. dated March 3, 1988 is concerned, the Court will vacate the requirement for various status reports and leave standing in regard to that order, its reservation as to whether or not a mandamus, writ of mandamus, should issue. Other than that, the rest of the portion of that order will continue and, the Court will continue to maintain jurisdiction over this proceeding as it unfolds.

*Id.* at 14.

The Court granted amici curiae its motion to intervene and granted defendant-intervenor opportunity to file any additional comments with the Court. The Court, as stated above, reconsidered whether or not a mandamus should issue and decided, in light of the high probability that the May 31, 1988 completion date was firm, the writ of mandamus would not issue as to the preliminary review results from Q4–Q7. The Court also vacated the Court's order inclusive in the *Nakajima All* opinion but left standing the reservation on whether or not a writ of mandamus should issue. The Court ordered the rest of that order would continue as would the Court's jurisdiction over the action.

On June 3, 1988, Commerce published the preliminary results of its administrative reviews of Q4–Q7. *Portable Electric Typewriters From Japan*, 53 Fed.Reg. 20353 (June 3, 1988). Commerce, in the published results, included the following statement:

Interested parties may request disclosure and/or an administrative protective order within 5 days of the date of publication of this notice and may request a hearing within 8 days of publication.

---

1. Defendant filed an appeal of the Court's Order of March 3, 1988 to the Court of Appeals for the Federal Circuit on May 19, 1988. Defendant also filed a motion for stay pending appeal on May 25, 1988. Since the Court vacated, in part,

its Order concerning those issues appealed, the Court denied defendant's motion on June 20, 1988 in furtherance of the Court's concern to avoid further delays.

Any hearing, if requested, will be held 35 days after the date of publication or the first workday thereafter. Prehearing briefs and/or written comments from interested parties may be submitted Not [sic] later than 25 days after the date of publication. Rebuttal briefs are rebuttals to written comments, limited to issues raised in those comments, may be filed not later than 32 days after the date of publication. The Department will publish the final results of the administrative review, including the results of its analysis of any such comments or hearing.

## DISCUSSION

The Court's jurisdiction to hear this action and decide whether or not to issue a writ of mandamus has been set forth at length in the Court's opinion in *Nakajima All,* 682 F.Supp. 52 (1988), and need not be set forth here.

■ Although mandamus has been recognized as an extraordinary remedy, the Court has authority to provide this remedy pursuant to 28 U.S.C. §§ 1585, 1651(a) and 2643(c)(1). *See Sharp Corp. v. United States,* 837 F.2d 1058 (Fed.Cir.1988). The Court observes the issuance of a writ of mandamus is: "an extraordinary equitable remedy which should be employed to compel the performance of a ministerial duty specifically enjoined by law where performance has been refused, and no meaningful alternative remed[y] exist[s]." *UST. Inc. v. United States,* — CIT —, —, 648 F.Supp. 1, 5 (1986); *aff'd on other grounds,* 831 F.2d 1028 (Fed.Cir.1987). Unreasonable delays in the agency performance of ministerial duties may also constitute sufficient basis for a writ of mandamus to issue. *See Id.; Matsushita Electric Industrial Co., Ltd. v. United States,* — CIT —, 688 F.Supp. 617 (1988), notice of appeal filed (CIT June 13, 1988).

An agency has a certain amount of statutory discretion in the way it conducts its affairs, procedures, and investigations. A reviewing court, when confronted with a petitioner's challenge to an agency action, must exercise a certain amount of prudence and restraint in dictating how an agency must perform.

■ Nevertheless, where an agency has a statutory timeframe within which to carry out those functions, it is incumbent upon the reviewing court to insure the agency complies with those requirements in a timely manner. Regardless of the fact that the statutory mandate of Congress setting forth a timeframe is mandatory or directory, the Court has a duty "to determine 'whether the agency's delay is so egregious as to warrant mandamus.'" *Sierra Club v. Thomas,* 828 F.2d 783, 797 (D.C.Cir.1987) (citation and footnote omitted).

The court, in *Sierra Club,* made its observations in a case where the agency had a statutory duty to avoid "unreasonable delay." Although that is not the exact situation in the instant action,[2] the findings of the court in *Sierra Club* provide important analogous instruction for the Court's review of Commerce's delays in publishing the preliminary and final results of its 751 reviews.

The court, in *Sierra Club,* was guided by the following in its review of the agency's delay:

It is well established that, in conducting this review, "[t]he reasonableness of the delay must be judged 'in the context of the statute' which authorizes the agency's action." In particular, if, as in this case, the claim is that the agency's delay deprives the petitioner of a statutory right to timely decisionmaking [sic], then we look to see whether Congress has imposed any applicable deadlines or otherwise exhorted swift deliberation concerning the matter before us or whether the statutory scheme implicitly contem-

---

**2.** Although the administrative review statute, 19 U.S.C. § 1675, does not employ the words "unreasonable delay", Congress was explicit in setting forth the 12–month timeframe in which Commerce "shall review and determine ... and shall publish the results of such review...." 19 U.S.C.A. § 1675(a)(1) (1987) (in pertinent part).

plates timely final action; whether interests other than that of timely decision-making [sic] will be prejudiced by delay; and whether an order expediting the proceedings will adversely affect the agency in addressing matters of a competing or higher priority. When we assess these factors, we must remember that, "[a]bsent a precise statutory timetable or other factors counseling expeditious action, an agency's control over the timetable of a rulemaking [sic] proceeding is entitled to considerable deference."

*Id.* at 828 F.2d 797. (footnotes omitted).

It has been recognized in a few cases that the timetable for completion of § 751 reviews is directory and not mandatory because Congress did not provide for a prohibition or adverse consequence to be imposed for failing to meet the statutory deadline. *See Philipp Bros., Inc. v. United States*, —— CIT ——, ——, 630 F.Supp. 1317, 1323 (1986), *appeal dismissed*, No. 86–1122 (Fed.Cir. July 18, 1986); *American Permac, Inc. v. United States*, —— CIT ——, ——, 642 F.Supp. 1187, 1191–92 (1986). These cases, though, are distinguishable from the case at bar since the court in *Philipp Bros.* and *American Permac* was faced with petitioners' request to impose penalties, in the form of liquidation, on Commerce for failing to comply with the statutory deadlines.

In *Philipp Bros.*, the court was petitioned to find the merchandise at issue liquidated by operation of law, 19 U.S.C. § 1504(a), when the time period of suspension of the liquidation of the merchandise extended beyond the twelve-month time limit for the § 751 review. Plaintiffs, in *Philipp Bros.*, argued the suspension automatically terminated at the end of the twelve-month period allowed for the 751 review and, therefore, the merchandise should have been liquidated. The Court, in its analysis, concluded:

there is nothing in the statute or legislative history that compels the conclusion that the implied suspension automatically terminates at the close of the twelve-month period specified in section 751. *Thus, in this situation, the court is unable to conclude that the statute imposes a penalty of deemed liquidation for the delay.* Although ITA's failure to comply with the statutory time limit is not condoned by this court, this failure to act in a timely manner did not deprive ITA of jurisdiction to complete the section 751 review.

*Philipp Bros.*, 630 F.Supp. at 1324 (emphasis added and footnote omitted).

The court, in *American Permac*, was faced with a similar challenge to Commerce's actions under 19 U.S.C. § 1504(d). Section 1504(d) provided that any entry not liquidated after four years from the entry date or withdrawal from warehouse date is deemed liquidated at the initial assessed amount unless liquidation is under suspension by statute or court order. The court stated:

In this case, the ITA did not publish its review determination until over four years after the latest entry date covered by the review. Plaintiffs do not dispute that the pendency of the § 1675(a) review necessitated an extension of the liquidation period beyond the one-year deadline specified in § 1504(a). They contend, however, that there was no lawful basis for an extension or suspension beyond the four-year limit under § 1504(d). Plaintiffs assert that there was no statutory authority for a suspension beyond that limit; and since defendant failed to seek a court ordered suspension, the entries should have been deemed liquidated after four years.

*American Permac*, 642 F.Supp. at 1190.

The court concluded:

The "deemed liquidated" penalty of § 1504 operates irrationally, and if applied in an antidumping context could lead to particularly inequitable assessments, since the amount of deposited duties may bear little relation to actual dumping margins. In that situation it would seem especially critical that parties be guaranteed an adequate means to challenge the basis of the assessments. The scheme for judicial review of agency determinations under the new law, if applicable at all, is ill-suited to that pur-

pose. Congress' failure to address this difficulty, coupled with its clearly expressed expectation that periodic review determinations would provide the basis for antidumping duty assessments on covered entries, persuades the court that Congress intended the statutory suspension of liquidation during a periodic review to override the possibility of deemed liquidation under § 1504(d).

The court, of course, does not condone the ITA's failure to meet its statutory time limits. However, the availability of an action to enforce those time limits accords adequate protection to parties who are truly aggrieved by undue agency delays.

*Id.* at 1197 (footnote omitted).

■ The Court finds, from the analysis in *Philipp Bros.* and *American Permac,* the directory or mandatory nature of the statute is important for the Court to consider when a court is petitioned to hold merchandise deemed liquidated (*i.e.,* in the nature of a penalty) where Commerce does not meet the twelve-month deadline under 19 U.S.C. § 1675(a)(1). Such is not the case at bar and does not appear to affect plaintiffs' petition here.

■ The Court, in the instant action, is not asked to liquidate merchandise or penalize Commerce, but to compel Commerce to complete the 751 reviews after undue delays of up to five years. The Court is asked to exercise its statutory authority to enforce the statute and, therefore, compel Commerce to "reasonably" comply with its statutory deadline of twelve-months. *Brock v. Pierce County,* 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986);[3] *Nakajima All,* 682 F.Supp. at 57; *UST, Inc.,* 648 F.Supp. at 4; *American Permac,* 642 F.Supp. at 1192 ("that remedy (judicial action to enforce the statutory deadline) clearly would be available to participants in ITA review proceedings where the ITA exceeds the publication deadline, by virtue of this court's jurisdiction under 28 U.S.C. § 1581(i)(4)"). This "reasonable" compliance translates to directing Commerce to complete its 751 review proceedings of Q4–Q7 before the delays in completion extend to a point encompassing a length of time beyond *three to six years.*

The Court of Appeals for the Federal Circuit has recognized the Court has the authority to exercise its sound discretion to fashion an appropriate remedy in compelling Commerce to complete the processing of ongoing administrative reviews in appropriate circumstances. *Sharp Corp. v. United States,* 837 F.2d 1058 (Fed.Cir. 1988). The Court has previously exercised this authority when Commerce has delayed conducting 751 reviews for over four years. *Matsushita Electric Industrial Co.,* 688 F.Supp. at 624–25 (where the court found a delay of four years in the administration of 751 reviews to warrant compelling Commerce to complete the reviews by a certain date.)

The Court, notwithstanding these observations, recognizes the burdens expressed by defendant that Commerce has experi-

---

**3.** The Court, in *Pierce County,* undertook to interpret Section 106(b) of the Comprehensive Employment and Training Act (CETA), 29 U.S.C. § 816(b) which "provides that the Secretary of Labor ... 'shall' issue a final determination within 120 days.... The question presented in [*Pierce County* was] whether the Secretary loses the power to recover misused CETA funds after that 120–day period has expired." *Pierce County,* 476 U.S. at 254–55, 106 S.Ct. at 1836. The Court observed:

We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When, as here, there are less drastic remedies available for failure to meet a statutory deadline,[7] courts should not assume that Congress intended the agency to lose its power to act.

*Id.* at 260, 106 S.Ct. at 1839. The Court, in footnote 7, suggested a complainant may ask for a less drastic remedy by bringing an action in court challenging the Secretary's failure to act by lengthy delays. The court would then "have the authority to 'compel agency action ... unreasonably delayed.'" *Id.* at n. 7.

Here, the plaintiff is asking for a "less drastic remedy" by compelling the agency to act when it has unreasonably delayed completion of the Q4–Q7 reviews for a period of two-five years. The Court seeks not for Commerce "to lose its power to act," but rather to encourage Commerce to utilize that power to act in a more alacritous manner.

enced in completing the reviews with being understaffed, receiving less than adequate funds, and experiencing other short comings commonly recognized in the administration of federal agency duties. This Court is not unsympathetic to this encumbrance. Nevertheless, these problems do not control in the agency's requirement to meet the statutory mandates legislated by Congress in 19 U.S.C. § 1675. If these problems are retarding the administration of Commerce's duties to such an extent as is present in this case, then it would seem imperative to voice these concerns to Congress.

The delay in completing the administrative reviews of Q4–Q7 extending back to April 18, 1983 is of sufficient concern to the Court and of equally great prejudice to plaintiffs to warrant a writ of mandamus issue.

The statute, § 1675, presents a clearly discernible timetable imposed by Congress concerning the completion of the reviews. Although this Court has recognized Commerce's discretion in carrying out its functions, Commerce is not immune from court supervision, pursuant to § 1581(i)(4), especially when executing its functions unreasonably, arbitrarily, or in a manner contrary to law.

Plaintiff is prejudiced by these undue delays. Not only is plaintiff denied any semblance of a timely made decision, but has incurred financial burdens of lost sales volume due to the added cost of deposit rates and other opportunity costs connected with restricted resources. The public interest is also prejudiced by the impediment to the free flow of commerce caused by these inordinate delays.

In addition, the issuance of the mandamus will not have an adverse affect on Commerce's ability to "address matters of a competing or higher authority." Commerce has completed the preliminary results and is in the process of receiving comments and briefs on the preliminary results on a certain time schedule encompassing thirty-five days after the publishing of those results. Notwithstanding these dates, Commerce did not set a date

certain for the completion of the final results. This reluctance to publish a date or even indicate an estimated completion date concerns the Court.

The Court, in its continued jurisdiction of this case, has the authority to insure the completion of the final results of Q4–Q7 will not fall victim to the same circumstantial delays surrounding the completion of the preliminary results of Q4–Q7.

Therefore, in accordance with the Court's opinion, Commerce is directed to complete and publish the final results of the 751 reviews of Q4–Q7, covering the time periods May 1, 1982 to April 30, 1986 by October 15, 1988.

This Court's order will be entered accordingly.