**SHARP ELECTRONICS CORPORATION,**
Plaintiff,

v.

**The UNITED STATES; The Department of Commerce; Robert A. Mosbacher, Secretary of Commerce, Defendants.**

**Court No. 88–08–00641.**

United States Court of International Trade.

Sept. 13, 1989.

Donovan Leisure Newton & Irvine, Peter J. Gartland and Thomas R. Trowbridge, III, New York City, for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Velta A. Melnbrencis, New York City, for defendants.

## OPINION

TSOUCALAS, Judge:

Plaintiff, Sharp Electronics Corporation, brings this action seeking declaratory judgment under 28 U.S.C. § 1581(i) (1982) with respect to a settlement agreement entered into with the United States Department of

Commerce (Commerce). The settlement agreement involved T.D. 71–76, an anti-dumping duty order covering television receiving sets, monochrome and color, from Japan. Defendants move to dismiss for lack of jurisdiction on three alternative grounds: (1) plaintiff's claim is tantamount to an action in contract, not involving the administration and enforcement of the customs laws; (2) the action is premature; and (3) the action is duplicative.

## Background

On April 28, 1980, Sharp Electronics Corporation, Commerce and other government entities[1] entered into a settlement agreement regarding T.D. 71–76. In the agreement, the United States allegedly agreed to use the "traditional methodology" in calculating foreign market value and United States prices for the appraisement or liquidation of entries of television receivers from Japan after March 31, 1979. *See* Complaint at 2 ¶ 10.

Plaintiff essentially seeks a declaratory judgment not only rendering the agreement valid and enforceable, but also requiring that the government use the methodology contemplated in the agreement. *See* Complaint at 4. Defendants argue that the Court lacks jurisdiction because this action involves subject matter specifically reserved for the district courts, *i.e.*, the interpretation of the terms of a contract, rather than a matter which involves the administration and enforcement of the trade laws as required for jurisdiction under § 1581(i). Defendants further argue that even if the Court exercises jurisdiction under the contract claim, the action is premature because it is presently unknown "precisely what methodology Commerce will employ or what justification Commerce may have for any change in methodology it may make." Defendants' Reply at 7–8. Defendants also submit that plaintiff may, in fact, be satisfied with Commerce's final results, in which case no court action would be necessary. Defendants lastly assert that this action is duplicative of a pending proceeding, *Sharp Corp. v. United States*, Court No. 86–10–01299, in which the plaintiff has raised a "traditional methodology" claim. *See* Defendants' Memorandum in Support of Defendants' Motion to Dismiss at 6.

## Discussion

### A. Jurisdiction

■ The initial issue to be resolved is whether plaintiff's claim is essentially contract-based and does not, therefore, involve the administration and enforcement of the trade laws as required for jurisdiction under § 1581(i).

Section 1581(i)(4) provides this Court with jurisdiction over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for ... administration and enforcement with respect to the [trade laws]." Congress implemented this section for the purpose of delineating customs-related matters over which the Court of International Trade would have exclusive jurisdiction from matters reserved for the district courts. H.R. Rep. No. 1235, 96th Cong., 2d Sess. 47, *reprinted in* 1980 U.S.Code Cong. & Admin.News 3729, 3758–59; *see generally Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1555–59 (Fed. Cir.1988). In making this jurisdictional demarcation, Congress intended the special expertise of the Court of International Trade to be used to "ensure greater efficiency in judicial resources and uniformity in the judicial decisionmaking process." H.R.Rep. No. 1235, 96th Cong., 2d Sess. 20, *reprinted in* 1980 U.S.Code Cong. & Admin.News 3729, 3731.

Congress, however, was careful not to "commit to the Court of International Trade's exclusive jurisdiction *every* suit against the Government challenging customs-related laws and regulations." *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 108 S.Ct. 950, 958, 99 L.Ed.2d 151 (1988) (emphasis in original). In establishing § 1581(i), Congress expressly proscribed

---

1. The United States Treasury Department; United States Customs Service (Customs); and the United States Department of Justice.

the creation of any new causes of action. *See* H.R.Rep. No. 1235, 96th Cong., 2d Sess. 33, *reprinted in* 1980 U.S.Code Cong. & Admin.News 3729, 3745. Contract claims which are divorced from the body of customs laws fall within the proscribed category. On the other hand, contract claims that *directly challenge* the administration and enforcement of customs laws properly invoke the jurisdiction of the court. *See Old Republic Insurance Co. v. United States,* 10 CIT 589, 597–98, 645 F.Supp. 943, 950–52 (1986).

The *Old Republic* court exercised jurisdiction under § 1581(i) in an action against Customs for material breach of a surety bond contract because the claim "call[ed] for the proper application of a customs regulation." *Id.* at 598, 645 F.Supp. at 952. The Court finds the instant action analogous to *Old Republic,* notwithstanding defendants' assertions to the contrary.

The thrust of the complaint here involves the interpretation of a settlement agreement which allegedly obligates the United States to use the "traditional methodology" in calculating foreign market value and United States prices for the appraisement and liquidation of entries covered under T.D. 71–76. In order to precisely define and interpret the term "traditional methodology" as used in the settlement agreement, the Court must analyze and apply the antidumping duty laws. Even if the settlement agreement adequately defines the term "traditional methodology," resolution of whether the term is being properly implemented requires particularized knowledge and proficiency with the antidumping duty laws. Therefore, the Court cannot accept defendants' position that the present action strictly seeks to compel implementation of the particular terms of the settlement agreement without challenging the substance of the antidumping duty order. Moreover, the legislative history demonstrates that Congress intended § 1581(i) to grant the court broad residual jurisdiction.[2] H.R.Rep. No. 1235, 96th Cong., 2d Sess. 33, 47, *reprinted in* 1980 U.S.Code Cong. & Admin.News 3729, 3745, 3758–59. For these reasons, the Court finds that plaintiff's claim challenges the administration and enforcement of the antidumping duty laws, and that jurisdiction is proper under § 1581(i)(4). The Court, however, finds that despite jurisdiction under this provision, the action is premature.

### B. *Ripeness*

■ The ripeness issue is controlled by the decision in *Matsushita Elec. Indus. Co. v. United States,* 12 CIT ——, 688 F.Supp. 617, *aff'd,* 861 F.2d 257 (Fed.Cir.1988). In *Matsushita,* as in the instant case, the United States agreed to use the "traditional methodology" when conducting administrative reviews pursuant to the antidumping finding covering television receiving sets, monochrome and color, from Japan under T.D. 71–76. In dismissing plaintiff's claim because the matter had not ripened to the point where judicial review was appropriate, the court in *Matsushita* stated that the question of methodology will be reviewable upon a challenge to the final revocation decision, and "[t]he possibility exists that the final agency determination may indicate that there was no dumping, in which event the plaintiffs would presumably find no reason to complain." *Id.* at ——, 688 F.Supp. at 622[3] (quoting *Special*

---

2. As originally proposed, § 1581(i) granted this court jurisdiction over "civil actions which arise *directly out of an import transaction and involve one of the many international trade laws.*" H.R. Rep. No. 1235, 96th Cong., 2d Sess. 33, *reprinted in* 1980 U.S.Code Cong. & Admin.News 3729, 3745 (emphasis added). However, the Subcommittee on Trade expressed concern over the ambiguous wording of this subsection and recommended a more generic approach "to provide *greater* protection for the rights of persons involved in disputes arising out of import transactions." *Id.* (emphasis added). In response to this concern, the full Judiciary Committee adopted proposed § 1581(i), which provided the Court with jurisdiction "over those civil actions which *arise out of a law of the United States pertaining to international trade.*" *Id.* (emphasis added).

3. The Court of Appeals for the Federal Circuit affirmed, stating:

> We agree with the Court of International Trade that any issue with respect to the methodology Commerce will use in conducting the reviews is not ripe for adjudication. At this time we do not know precisely what method-

*Commodity Group v. Baldridge*, 6 CIT 264, 269, 575 F.Supp. 1288, 1293 (1983)).

The Court is not persuaded that sufficient justification exists upon which to distinguish the case at bar from *Matsushita*. As in *Matsushita*, the methodology Commerce will employ in the administrative review is not precisely known. Plaintiff merely speculates that Commerce will deviate from the "traditional methodology" as specified in the settlement agreement, resulting in the prevention of a final revocation order. Even if Commerce chooses not to employ the "traditional methodology," Commerce may still reach a final determination which revokes the antidumping duty order. Such action would in all probability dispense with any reason plaintiff would have to seek judicial review in this Court. If, on the other hand, Commerce does not calculate the foreign market value and United States prices for the appraisement and liquidation of entries using the "traditional methodology," the question of methodology will be reviewable, under 28 U.S.C.

ology Commerce will employ or what justification Commerce may have for any change in methodology it may make. Moreover, it is possible that Commerce may finally revoke the dumping order under whatever methodology it employs. If that happens, Matsushita would not be injured by any change in methodology, and there would be no reason for it to seek judicial review or for us to decide the issue. *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 [, 101 S.Ct. 488, 495, 66 L.Ed.2d 416]

§ 1581(c), upon a challenge to the final determination. Plaintiff, then, will have an adequate remedy.

To the extent Commerce has not rendered a final administrative decision and plaintiff has not experienced its effects, "it is more accurate to characterize the failure of this action as due to the exercise of the Court's discretion not to entertain actions which are not ripe. It is not due to a congenital lack of jurisdiction over these matters." *Krupp Stahl AG v. United States*, 4 CIT 244, 247, 553 F.Supp. 394, 396 (1982). Therefore, the action is dismissed as not yet ripe for decision. This resolution obviates the need to address the issue of duplicity.

(1980). On the other hand, if Commerce should not issue a final revocation order, the question of methodology will be reviewable upon a judicial challenge to that determination. We agree with the Court of International Trade that judicial intervention into Commerce's apparent change of methodology, including its consistency with the settlement agreement, is unwarranted at this stage. *Matsushita*, 861 F.2d at 260.