SHARP CORPORATION and Sharp Electronics Corporation, Plaintiffs,

v.

UNITED STATES, et al., Defendants.

No. 86–10–01299.

United States Court of International Trade.

Nov. 15, 1989.

---

15. *Supra,* page 545; Plaintiff's Memorandum, p.

16. *See* plaintiff's statement of facts, para. 11.

Donovan, Leisure, Newton and Irvine, Peter J. Gartland, Washington, D.C., and Thomas R. Trowbridge III, New York City, for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Jeanne E. Davidson, for defendants.

## OPINION

MUSGRAVE, Judge.

Plaintiff seeks a writ of mandamus compelling the International Trade Administration of the Department of Commerce to complete administrative reviews necessary to finalize a decision regarding revocation of an outstanding antidumping order. Defendant moves, pursuant to USCIT R. 12(b)(5), to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

*Held:* Plaintiff has not met the requirements for issuance of a writ of mandamus;

the petition for writ of mandamus is dismissed. Plaintiff's complaint fails to state a claim; the complaint is dismissed.

[Judgment for defendant.]

## BACKGROUND

This case represents another episode in the continuing saga of "Bar Wars" being waged between the International Trade Administration of the Department of Commerce (hereinafter "Commerce") and certain Japanese exporters concerning the proper administration of T.D. 71–76, an outstanding antidumping order. 36 Fed. Reg. 4597 (1971). The order covers television receiving sets, both monochrome and color, exported to the United States from Japan at less than fair value.

This case, like *Matsushita Electric Industrial Co., Ltd. et al. v. United States,* 12 CIT ——, 688 F.Supp. 617, *aff'd,* 861 F.2d 257 (Fed.Cir.1988), has a "long and tortuous history." 688 F.Supp. at 618. To summarize that history, Sharp Corporation and Sharp Electronics Corporation ("Sharp") have been seeking a final determination regarding the revocation of T.D. 71–76 as applied to their products. Pursuant thereto, Sharp and the governmental entities involved entered into a settlement agreement on April 28, 1980, in which the United States allegedly agreed to use the "traditional methodology" when conducting administrative reviews in calculating foreign market value and United States prices for the appraisement or liquidation of entries of television receivers from Japan after March 31, 1979. Defendant purportedly agreed to revoke T.D. 71–76 as soon as the circumstances warranted. In return, Sharp agreed to pay approximately $70 million (of which $9,124,000 was eventually paid) in settlement of all claims for duties assessed on television receivers on or before March 31, 1979.

Commerce then commenced annual reviews in accord with 19 U.S.C. § 1675(a)[1],

---

1. The annual review process arose under the Trade Agreements Act of 1979, Pub.L. 96–39, 93 Stat. 144 (1979). Specifically, § 751 established

the annual review procedures. Pub.L. 96–39, § 751, 93 Stat. at 175.

The Trade and Tariff Act of 1984 amended § 751, eliminating automatic reviews, and now

the results of which indicated no dumping on the part of Sharp for the first and second round reviews. Plaintiff then applied to have T.D. 71–76 revoked as to their imports. Pursuant to 19 C.F.R. § 353.54(e), Commerce published a notice of tentative revocation of T.D. 71–76 with respect to Sharp on August 18, 1983. 48 Fed.Reg. 37506, 37508.

Commerce also initiated administrative reviews for five subsequent periods between April 1, 1981 and February 28, 1986.

Plaintiff filed this complaint on October 20, 1986, seeking to compel Commerce to publish the results of the second, third, fourth and partial fifth administrative reviews; to enjoin Commerce from conducting reviews initiated subsequent to publication of the notice of tentative revocation; to compel Commerce to employ the "traditional methodology" in their reviews; and, to finalize the revocation of T.D. 71–76 with respect to Sharp.

This Court (Judge Rao) granted Sharp a preliminary injunction on March 5, 1987, barring Commerce from taking any steps to conduct administrative reviews under T.D. 71–76 as to the plaintiff for periods subsequent to August 18, 1983, taking any other actions inconsistent with finalizing revocation of T.D. 71–76 as to plaintiffs, and from altering the "traditional methodology" for reviews of periods up to August 18, 1983.

The government filed an appeal of this injunction to the Court of Appeals for the Federal Circuit on March 17, 1987, and then filed a motion with this Court to dismiss Sharp's complaint for lack of jurisdiction or, in the alternative, for failure to state a claim, on June 1, 1987. This motion is still pending before the Court.

The preliminary injunction was vacated by the Court of Appeals for the Federal Circuit on January 21, 1988, in *Sharp Corp., et al. v. United States*, 837 F.2d 1058 (Fed.Cir.1988).

On April 26, 1988, plaintiff filed with this Court a petition (which Sharp erroneously styled a "motion") for issuance of a writ of mandamus, seeking essentially the same relief as the preliminary injunction. Specifically, Sharp seeks to have Commerce:

1) Complete all administrative reviews of T.D. 71–76 as to Sharp, for periods prior to August 18, 1983,

2) Use the "traditional methodology" in conducting these reviews in accordance with the alleged terms of the 1980 settlement agreement,

3) Finalize revocation or deny revocation of T.D. 71–76 as to Sharp, and

4) Respond to Sharp's discovery request within 30 days.

This petition is still pending before the Court.

On April 27, 1988, Commerce initiated the ninth administrative review of Sharp. Commerce contends this review will constitute the "post gap update" review and provide them with the "recent data" needed to reach a final decision regarding revocation of T.D. 71–76.[2] Defendants' Memorandum in Opposition to Plaintiff's Motion for Issuance of Writ of Mandamus at 16.

On August 28, 1989, Commerce issued the final results in the second administrative review (preliminary results of which were published on August 18, 1983—finding no dumping, 48 Fed.Reg. 37506—and

---

provides for reviews only upon a timely request (or certain other specified circumstances). Pub.L. 98–573, § 611(a)(2)(A), 98 Stat. 2948, 3031 (1984).

**2.** *Matsushita*, 688 F.Supp. 617, clarified the holding of *Freeport Minerals v. U.S.*, 776 F.2d 1029 (Fed.Cir.1985), which held that Commerce's failure to use recent pricing data in deciding whether revocation of an outstanding antidumping order was warranted constituted an abuse of discretion. Commerce interpreted the decision as a license to conduct reviews up through the present review periods. Nothing that "a requirement that the data be current up to the date of the final revocation determination frequently would make it impossible ever to render a final determination on revocation," *UST v. U.S.*, 831 F.2d 1028, 1032–33 (Fed.Cir. 1987), *Matsushita* held that "Commerce is *not required* to conduct any post gap review periods," 688 F.Supp. at 623 (emphasis in original). What, if any, post gap data to be considered is within the Secretary's discretion. *UST*, 831 F.2d at 1033. *See* 19 C.F.R. § 353.54.

again on August 30, 1988—finding a dumping margin of 3.37 percent, 53 Fed.Reg. 33164). The final results yield dumping margins of .86 per cent for Sharp. 54 Fed.Reg. 35517 (Aug. 28, 1989).

With this background in mind, the Court must now dispose of plaintiff's petition for writ of mandamus and evaluate the merits of their complaint.

## DISCUSSION

### A. *Writ of Mandamus*

Before examining the parties' arguments, a few preliminary observations about mandamus are in order. Courts are in agreement that mandamus is an extraordinary form of relief, to be used only if no other remedy is adequate. *See Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 664, 98 S.Ct. 2552, 2558, 57 L.Ed.2d 504 (1978); *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976); *Canadian Tarpoly Co. v. U.S. Int'l Trade Comm'n*, 640 F.2d 1322, 1325 (CCPA 1981); *Margolis v. Banner*, 599 F.2d 435, 443 (CCPA 1979). As a general rule, courts are reluctant to grant petitions for writs of mandamus.

This Court has often deferred to such precedent. In *UST, Inc. v. United States*, 10 CIT 648, 648 F.Supp. 1 (1986), plaintiffs sought a writ of mandamus directing Commerce to complete an administrative review up to the date of tentative revocation of the antidumping order at issue. Noting that "mandamus is an extraordinary remedy which should be employed to compel the performance of a ministerial duty specifically enjoined by law where performance has been refused, and no meaningful alternative remedies exist," *id.* at 653, 648 F.Supp. 1, the Court felt it unnecessary to examine the merits of the petition since "defendant's proposed schedule appears to be such an alternative." *Id.* at 654, 648 F.Supp. 1.

Earlier this year, in *Timken Co. v. United States and China Nat'l Machinery & Equip. Import and Export Corp.*, 13 CIT ——, 715 F.Supp. 373 (1989), the Court granted plaintiff's petition for writ of mandamus. That case involved Commerce's failure to publish in the *Federal Register* notice of the Court's decision in a related case within ten days of entry of such decision, as required by 19 U.S.C. § 1516a(e). The Court entered an order on May 26, 1989, directing Commerce to publish notice of the related decision, which Commerce failed to heed. The writ of mandamus followed.

*Timken* relied on the oft-cited three-part test for issuing mandamus: 1) Plaintiff must have a clear right to the relief sought; 2) There must be a clear duty on the part of the defendent to do the act in question; and 3) Adequate alternative remedies must be absent. *See Kerr*, 426 U.S. 394, 96 S.Ct. 2119; *Maier v. Orr*, 754 F.2d 973, (Fed.Cir.1985); *13th Regional Corp. v. U.S. Dep't of Interior*, 654 F.2d 758 (D.C. Cir.1980).

The Court found that requisite grounds existed, based on this test, to provide the remedy of mandamus. However, *Timken* can easily be distinguished from this case, since (as Judge Aquilino noted in *Smith Corona Corp. v. United States*, 13 CIT ——, 718 F.Supp. 63 (1989)), the writ of mandamus in *Timken* was necessary "only after the ITA had rendered a final, reviewable administrative determination and after there had been judicial review and entry of final judgment." *Id.* at 8. Such circumstances are clearly not present in this case.

Because of the vast amounts of time and legal energy expended by the parties in the instant action, this Court feels obliged to deviate from the holding in *UST* and consider the merits of plaintiff's petition. After analyzing plaintiff's arguments, however, the Court reluctantly concludes that mandamus should not issue.

■ Plaintiff argues that this Court, under 28 U.S.C. § 1651(a), "has the power to issue a writ of mandamus directing Commerce to accomplish what it has already been ordered to do." Plaintiff's petition at 6. Plaintiff claims mandamus is necessary to effectuate the March 5, 1987 preliminary injunction granted by Judge Rao, since its terms were "largely undisturbed by the C.A.F.C.," *id.* at 6, when the Court of Ap-

peals for the Federal Circuit vacated that order in *Sharp Corp. v. United States,* 837 F.2d 1058 (Fed.Cir.1988). In effect, then, plaintiff is now seeking to reinstate the relief sought in the vacated preliminary injunction through the vehicle of mandamus.

However, such an argument is both factually and legally erroneous. This Court can hardly direct Commerce to carry out the terms of an order that has been reversed, even if, in reversing, the Court of Appeals for the Federal Circuit "essentially endorsed [this Court's] findings regarding the need for an expeditious decision on the revocation of T.D. 71–76." *Id.* at 4. Ordering Commerce to comply with the terms of a vacated order by renaming it mandamus (thereby providing plaintiffs with the same relief as the preliminary injunction) would directly contravene the *reversal* of the preliminary injunction as improperly granted, *Sharp,* 837 F.2d at 1063, as well as the appeals court's decision to leave resolution of the merits of the complaint and petition for writ of mandamus to *this* Court in the first instance. *Id.* at 1064. Therefore, the issuance of a writ of mandamus directing Commerce to comply with an order that has been reversed (or, for that matter, a decision that has not yet been made) would be clearly erroneous.

Plaintiff relies exclusively on *Potomoc Electric Power Co. v. Interstate Commerce Commission,* 702 F.2d 1026, *supplemented,* 705 F.2d 1343 (D.C.Cir.1983) to support its claim that mandamus should issue. The genesis of that case was the commencement, in 1974, by Potomoc Electric Power Co. ("PEPCO") of a proceeding before the Interstate Commerce Commission ("ICC") protesting rates charged by Conrail for hauling coal to PEPCO's generating plants. Two years later, the ICC entered an order, which PEPCO appealed to the D.C. Circuit. The appeals court remanded the decision to the ICC for further consideration of the unit-train rates at issue. The ICC responded by reopening those proceedings to consider new evidence

and additional issues, and PEPCO thereupon sought review in the D.C. Circuit of the ICC's decision to reopen the proceedings.

Although a writ of mandamus issued in that case, the court found that 28 U.S.C. § 1651(a) furnished the basis for issuing the writ. That section, known as the All Writs Act, provides federal courts with the power to issue such writs "if necessary to effectuate or prevent the frustration of orders previously issued." *PEPCO* at 1032. *See also United States v. New York Telephone,* 434 U.S. 159, 172–73, 98 S.Ct. 364, 372–73, 54 L.Ed.2d 376 (1977). Plaintiff notes this in their petition, apparently in support of their above-referenced position that the terms of the vacated preliminary injunction are still in force, and mandamus is necessary to effectuate those terms. This is a non-argument; the Court of Appeals for the Federal Circuit vacated those orders, and no other outstanding orders related to this action have been issued by this Court. No need for mandamus under 28 U.S.C. § 1651(a) exists, because there are no orders to be prevented or frustrated.

In fact, the *PEPCO* court specifically noted "[i]f our earlier mandate compelled the Commission to act in a timely manner, and if it has failed to do so, we may correct its error by use of a writ of mandamus." *PEPCO* at 1032. No earlier mandate by this Court has compelled Commerce to do anything, and no need for mandamus arises.

The D.C. Circuit also found its power to issue mandamus rooted in another aspect of 28 U.S.C. § 1651: the power to preserve future jurisdiction if future review would be jeopardized through further delay. The court issued mandamus because further delay by the ICC would directly affect "the scope of our future jurisdiction over any appeal of an eventual final order of the Commission." *Id.* at 1032. Here, our jurisdiction is in no way jeopardized by any delays by Commerce, since this Court has exclusive jurisdiction over any final determination whether to revoke T.D. 71–76.[3]

---

**3.** However, this Court does have jurisdiction under the All Writs Act "to compel antidumping

determinations which have been unreasonably delayed in order to preserve the court's jurisdic-

28 U.S.C. § 1581(c). (Of course, this jurisdiction cannot be exercised until Commerce eventually issues a final determination.) Thus, that portion of the All Writs Act does not require this Court to issue mandamus in the present context.

A final basis relied upon by the D.C. Circuit in *PEPCO* was the power grounded in 5 U.S.C. § 706(1) to compel agency action through the use of a writ of mandamus. *Id.* at 1034. However, in justifying this basis, the court again noted the effect that further regulatory delay would have on the court's future jurisdiction to review this controversy. *Id.* at 1035. Such grounds are lacking here.

The court also noted that "Congress has also enacted the very specific timetable in 49 U.S.C. § 10327 to address the problem of Commission delay." *Id.* at 1034. No such statutory timetable for alleviating Commerce's backlog in reviewing outstanding antidumping orders exists, which sufficiently distinguishes the D.C. Circuit's reasoning for granting a writ from the grounds urged by plaintiff in this case.[4] Here, the statutes only provide that a final decision on revocation shall be made *as soon as possible* after the preliminary determination to revoke is published. 19 C.F.R. § 353.54(f).

Plaintiff's petition lacks any reference to the three-part standard set out above.

In opposition to plaintiff's petition, Commerce advances a litany of reasons why the Court should dismiss the petition. Defendant maintains that issuing a writ of mandamus would essentially reinstate permanently the relief which the Court of Appeals for the Federal Circuit expressly held the plaintiffs are not entitled to on a preliminary basis in *Sharp*, 837 F.2d 1058. While plaintiffs *are* seeking essentially the same relief as the vacated preliminary injunction, our appeals court vacated the injunction issued by Judge Rao because they found no "irreparable injury" necessary to support a preliminary injunction. *Id.* at 1063. The Court of Appeals for the Federal Circuit was careful to note that this finding carried "no implication with respect to any of the remaining issues in these cases ... More particularly, we indicate no views regarding the appropriate disposition by the Court of International Trade of the pending requests for mandamus ..." *Id.* Determination of these and other issues "are matters for the Court of International Trade to determine in the first instance, in the exercise of its sound discretion." *Id.* at 1064. The government's argument, while attractive enough, is unpersuasive.

The remainder of the government's arguments do not merit examination at this time, since plaintiff may well choose to renew their petition for mandamus before this Court should Commerce fail to complete the outstanding administrative reviews within a reasonable time. Such an event would provide a full opportunity for this Court to review defendant's contentions.

This Court notes that Commerce also does not refer to the three-part standard for mandamus, or any other test, except for noting that mandamus is an extraordinary remedy and should be granted only in the most exceptional of circumstances to compel the performance of a ministerial duty, plainly owed, when performance has been refused and no meaningful alternatives are available. *Kerr*, 426 U.S. at 403, 96 S.Ct. at 2124; *Special Commodity Group v. Baldridge*, 6 CIT 264, 270–71, 575 F.Supp. 1288, 1293 (1983).

---

tion to review those final determinations." *Sharp*, 837 F.2d at 1062. Although this case involves finalization of revocation of an antidumping order rather than an antidumping determination, this finding lends some support to plaintiff's argument.

**4.** It is true, however, that 19 U.S.C. § 1675(a) mandates completion of § 751 reviews within a twelve-month period after the notice of tentative revocation has been published. That deadline has obviously not been met here, but that timetable has been held to be directory and not mandatory because no prohibition or adverse consequences are imposed for failing to meet the deadline. *Matsushita*, 688 F.Supp. at 624, citing *Philipp Bros., Inc. v. United States*, 10 CIT 76, 82–83, 630 F.Supp. 1317, 1323–24 (1986); *American Permac, Inc. v. United States*, 10 CIT 535, 539, 642 F.Supp. 1187, 1191–92 (1986).

By examining the four items of relief Sharp seeks in their petition for mandamus in light of the well-known test enunciated earlier, Commerce (and Sharp) could have presented more cogent arguments. This Court chooses to dismiss plaintiff's petition because that three-part criterion has not been satisfied.

One item of relief Sharp seeks in their petition is that Commerce use the "traditional methodology" in completing the administrative reviews. This portion of the petition has been resolved by *Sharp, Inc. v. United States*, 13 CIT ——, 720 F.Supp. 1014 (1989). In that opinion, the Court (Judge Tsoucalas) held this issue unripe for adjudication. "The question of methodology will be reviewable upon a challenge to the final revocation decision, and '[t]he possibility exists that the final agency determination may indicate there was no dumping, in which event plaintiffs would presumably find no reason to complain.' " *Id.* at 1016–17, quoting *Matsushita*, 688 F.Supp. at 622. Thus, defendant's arguments on this point are now moot, and Sharp clearly has no present right to this relief (in accordance with the first hurdle under the three-part test).

Similarly, defendant argues that 28 U.S.C. § 2637 requires Commerce to exhaust their administrative remedies before the CIT can exercise its judicial authority in requiring Commerce to use the "traditional methodology" in continuing administrative reviews of T.D. 71–76. Such an argument is now moot, in light of *Sharp*, 720 F.Supp. 1014.

■ Plaintiff also seeks compliance with their discovery requests through mandamus. In an action of this type, though, the scope of judicial review is confined to the administrative record, and discovery is permitted only in cases of "apparent incompleteness of the record," *Atlantic Sugar, Ltd. v. United States*, 85 Cust.Ct. 131, C.R.D. 80–16 (1980), or where there has been a strong showing of bad faith or improper behavior on the part of agency officials. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *Bar Bea Truck Leasing Co. v. United States*, 4 CIT 104, 108, 1982 WL 2235 (1982). Since neither of these circumstances appear in this case, plaintiff has no right to discovery. Commerce has no duty to provide Sharp with discovery documents because Sharp has failed to exhaust their administrative remedies.

■ Another item of relief sought by Sharp is that Commerce complete all administrative reviews for periods up to the date of publication of "Notice of Tentative Determination to Revoke or Terminate." Clearly, Commerce must finalize all reviews up to the period of tentative revocation.[5] 19 C.F.R. § 353.54(f). *See also UST*, 10 CIT 648, 648 F.Supp. 1, and *Matsushita*, 688 F.Supp. 617. Thus, Sharp has a clear right to this relief, and Commerce has an unambiguous duty to provide such relief.

Finally, Sharp requests a final decision one way or another concerning revocation of T.D. 71–76. Plaintiff clearly has a right to this relief, and Commerce has a clear duty to provide such relief. 353 C.F.R. § 54(a).[6]

Thus, two of plaintiff's demands (that Commerce adhere to the "traditional methodology" and comply with requests for discovery) are not entitled to mandamus since plaintiff has no clear right to this relief.

---

**5.** Through this request, plaintiff implicitly seeks to prevent Commerce from conducting any post-tentative revocation reviews. This issue was resolved in *Matsushita*, 688 F.Supp. 617, as noted earlier in footnote 2. In any event, Sharp makes no specific demands in their petition regarding post-gap review periods, and information that the government may consider during these periods is discretionary.

**6.** The language provides: "Whenever the Secretary determines that sales of merchandise subject to an Antidumping Finding or Order or a suspended investigation are no longer being made at less than fair value within the meaning of Section 731 of the Act and is satisfied that there is no likelihood of resumption of sales at fair value, he *may* act to revoke or terminate, in whole or in part, such Order or Finding or suspended investigation" (emphasis added). Thus, the Secretary may or may not revoke the order, but a decision one way or the other must be made, and that is all plaintiff requests.

The other two demands (that Commerce complete all administrative reviews of T.D. 71–76 for periods prior to the date of tentative revocation, and that Commerce finalize revocation or deny revocation) are rights legitimately claimed by Sharp, and ones which Commerce has a clear duty to remedy. As to these latter two items, the only remaining question is whether there are adequate alternative remedies.

Commerce maintains they are following the schedule set forth in the Joint Status Report of July 18, 1989. Such discipline, in other circumstances, might supply the "adequate alternative remedy" necessary to avoid mandamus. In this case, however, the so-called "schedule" contains ambiguities and conflicting assertions that render it more akin to vague assurances, rather than a concrete schedule. For instance, Commerce claimed they would publish the final results for the third through seventh administrative reviews by September 30, 1989. Defendant's Status Report at 1 (September 18, 1989). That date has come and gone with no response from Commerce. Moreover, in the Joint Status Report, Commerce claimed that *no action would be taken* concerning the sixth and seventh reviews (as well as the eighth and tenth reviews) unless Sharp's request for revocation is denied. Joint Status Report at 4. This Court is perplexed by defendant's apparent vacillation regarding which periods Commerce *is* reviewing and their targeted completion dates. For this reason, the Court finds the government's representations concerning their adherence to the above-referenced "schedule" unpersuasive. Such efforts do not provide the adequate alternative necessary to avoid mandamus.

Nonetheless, the Court declines to issue mandamus because mandamus should issue only where the clear duty owed to plaintiff *has been refused. Kerr* 426 U.S. at 403, 96 S.Ct. at 2124, *UST* 10 CIT at 653, 648 F.Supp. 1. In this case, Commerce has not *refused* to perform the administrative reviews which they clearly have a legal obligation to perform, *see* 19 C.F.R. § 353.54(f), nor have they *refused* to finalize the revocation. Rather, delays imposed by both plaintiff and defendant have contributed to the lengthy review process for this particular case. Whether these lengthy delays rise to the level of "refusal" may merit evaluation at a later time, but clearly Commerce has not, so far, refused to complete the reviews.

### B. *Motion to Dismiss Complaint Under USCIT R. 12(b)(5)*

Commerce continues to insist that the establishment of a deadline for completion of the administrative reviews remains the *only* remedy available to Sharp.[7] *See* Defendant's Status Report at 2. Because plaintiff did not request the establishment of a deadline for completion of the reviews in their complaint, Commerce argues the action must be dismissed for failure to state a claim for which relief can be granted under USCIT R. 12(b)(5).

On a prefatory note, this Court's dismissal of plaintiff's petition for writ of mandamus does not provide the "lack of a legally sufficient claim" necessary to grant a 12(b)(5) motion to dismiss. Such motions, which are directly parallel to F.R.C.P. 12(b)(6), are addressed only to the legal sufficiency of the complaint (and not the legal sufficiency of the petition for writ of mandamus)[8]. However, an independent examination of the complaint reveals its lack of a legally sufficient claim upon which relief can be granted, and the government's 12(b)(5) motion is granted.[9]

---

7. The government cites *Matsushita* in support of this proposition, but that case did not explicitly limit plaintiff's remedies to this one option.

8. On a motion under Rule 12(b)(5), the court's inquiry essentially is limited to the content of the complaint. *Jackson v. Procunier,* 789 F.2d 307, 309 (5th Cir.1986), citing C. Wright & A. Miller, *Federal Practice and Procedure,* § 1356 at 598 (1969).

9. The government's primary asserted grounds for dismissal—lack of jurisdiction—have been mooted by the *Matsushita* decision, which held that this Court does indeed have jurisdiction to entertain actions contesting delays in administrative reviews of outstanding dumping orders, based on 28 U.S.C. 1581(i) (residual jurisdiction). *See also Nissan Motor Corp. v. United States,* 10 CIT 820, 651 F.Supp. 1450 (1986).

As a general rule, dismissal under F.R. C.P. 12(b)(6) is disfavored by the courts and is rarely granted. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981), citing C. Wright & A. Miller, *Federal Practice and Procedure*, § 1357 at 598 (1969). "Dismissal of a claim on the basis of a bare bones pleading is a precarious disposition with a high mortality rate." *Int'l Erectors, Inc. v. Wilhoit Steel Erectors and Rental Serv. et al.*, 400 F.2d 465, 471 (5th Cir.1968).

However, in this case, plaintiff's complaint lacks a request to establish a deadline for completion of the § 751 reviews.[10] In fact, the parties have evinced a distinct reluctance against the imposition of any kind of deadlines. Had plaintiff requested the establishment of a deadline for completion of all outstanding reviews, this Court, in following *Nissan*, 10 CIT 820, 651 F.Supp. 1450, *UST*, 10 CIT 648, 648 F.Supp. 1, *Sharp*, 837 F.2d 1058, *Matsushita*, 688 F.Supp. 617 and *Toshiba Corp. v. United States*, 13 CIT ——, 711 F.Supp. 631 (1989), would be inclined to impose such a deadline.

Since the other elements of requested relief in plaintiff's complaint are inappropriate for judicial attention at this time, and Sharp failed to request a deadline in their complaint, this Court has no choice but to dismiss plaintiff's complaint.

Finally, "neither this Court nor the Court of Appeals look favorably upon the prolonged delays in Commerce's administration of its administrative reviews." *Id.* at 634. Any further procrastination by the government in finalizing a determination regarding revocation of T.D. 71–76 as to plaintiff will receive severe scrutiny by this Court. The time has arrived to end this seemingly endless controversy.

---

10. In their Joint Status Report, Sharp *did* request the establishment of a deadline for publication of the final results of the second administrative review. Since that review has now been finalized, *see* 54 Fed.Reg. 35517 (Aug. 28, 1989), this point is now moot. Also, in their response to Defendant's Status Report (November 13, 1989), Sharp makes no further reference to the need for establishment of any deadlines.