Slip Op. 03-39

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| EASTMAN CHEMICAL COMPANY, CHEVRON USA, INC., AMERICAN SYNTHETIC RUBBER CORPORATION, MICHELIN NORTH AMERICA, INC., and MICHELIN TIRE CORPORATION, | : : : : : : | |
| Plaintiffs, | : : | Court No. 02-00667 |
| v. | : : : | |
| UNITED STATES, | : : | |
| Defendant. | : : | |

[Motion for mandamus denied.]

Dated: April 3, 2003

Neville Peterson LLP (John M. Peterson, Curtis W. Knauss, George W. Thompson and Molly R. Coyne) for plaintiffs.

Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Jeanne E. Davidson, Todd M. Hughes and Stefan Shaibani), Richard McManus, Office of the Chief Counsel, United States Customs Service, of counsel, for defendant.

## OPINION

**RESTANI, Judge**: This matter is before the court on plaintiffs' motion for mandamus.

Plaintiffs seek an order requiring the United States Customs Service ("Customs") to hire more

personnel or devote more presently employed personnel to the processing of Harbor Maintenance

Tax ("HMT")[1] administrative refund requests so as to achieve a rate of disposition of at least 500

---

[1] See 26 U.S.C. § 4461 et seq.

claims per month.

The HMT was declared unconstitutional as applied to exports in United States v. United States Shoe Corp., 523 U.S. 360 (1998).  Initially, most HMT refund claims were asserted by means of court action under 28 U.S.C. § 1581(i), the court's residual jurisdiction provision.  In Swisher Int'l, Inc. v. United States, 205 F.3d 1358, 1369 (Fed. Cir.), cert. denied, 531 U.S. 1036 (2000), however, the right to file administrative refund claims was recognized, with the concomitant right to protest a denial thereof and to appeal such denial to the Court of International Trade.  See 28 U.S.C. § 1581(a) (protest denial jurisdiction).

It is undisputed that Customs took no action to process pending administrative refund claims for payment until certiorari was denied in Swisher on December 4, 2000.[2]  531 U.S. at 1036.  It is undisputed that after that date, Customs did not complete its first disposition of an administrative claim until September 2001.  It is also undisputed that Customs published an interim procedure for filing such claims on March 28, 2001, 66 Fed. Reg. 16,854, and a final regulation on July 2, 2001.[3]  See 66 Fed. Reg. 34,813.

In May 2001, plaintiffs herein, pursuant to this procedure, commenced filing of their administrative claims, and filed their last claim on November 14, 2001.  The claim of plaintiffs Eastman Chemical Company and Chevron USA, Inc. have been initially processed, but final

---

[2]  Up to the time of issuance of Swisher, Customs denied any administrative HMT claims, first on substantive grounds and post-U.S. Shoe on procedural grounds.

[3]  The regulation established a one year time limit to file refund requests for HMT payments that were paid on a quarterly basis and set December 31, 2001, as the last day for filing refund requests for HMT payments more than one year old.  66 Fed. Reg. at 34,817; see 19 C.F.R. § 24.24(e)(4).  The regulation has since been upheld.  See M.G. Maher & Co. v. United States, Slip. Op. 02-102 (Ct. Int'l Trade Aug. 30, 2002).

settlement has not been achieved by the parties with respect to such claims. Plaintiff Michelin's later filed claims are in the queue for processing. Customs avers that it cannot locate any claim by plaintiff American Synthetic Rubber Corporation. Plaintiffs have not responded to this statement.

On May 13, 2002, Customs published a regulation clarifying the procedure for verifying the claims. 67 Fed. Reg. 31,948. Customs has no records for payments prior to mid-1990.[4] Under the procedures as to those claims, claimants must submit supporting documentation. For later claims, Customs searches its records for proof of payment and advises claimants if the support exists, so that claimants are not initially required to search their records for supporting documentation. Id.

As of February 28, 2003, of the 7,706 claims submitted, 2,666 had been processed. Declaration of Thomas A. Smith, Director of the National Finance Center, U.S. Customs Service ¶ 25; Second Supplemental Declaration of Thomas A. Smith ¶ 3. Customs does not expect to initially process Michelin's claims until November 2003, a few months before the end of the initial processing phase. See Second Supplemental Declaration ¶ 11. Customs has no set target for the number of claims it will process per month, but is heading towards 300 claims per month. Id. ¶ 4. It must also reach agreement or finally deny claims in a secondary phase of processing, if claimants do not agree with Customs certification in the initial processing.

Mr. Smith testified at an evidentiary hearing of March 6, 2003, that Customs has sixteen (16) contract employees and approximately four (4) full-time equivalent Customs employees

---

[4] Prior aged records were destroyed in the ordinary course.

devoted to this task.  See Hr'g Tr. at 4, 44.  Customs has let a multiyear contract for this purpose at an annual cost of $600,000.  Id. at 46, 50.  Mr. Smith opined that more contract employees would not appreciably improve the situation and that more Customs on site employees cannot be devoted to the process without adversely affecting the vital operations at the finance center where the claims are processed.  See id. at 4–5.  He estimates that more manpower could speed up the process by at most a few months.  Id. at 54.

Mr. Smith testified that, as opposed to earlier rounds of processing pursuant to litigated cases, the current claims involve large aggregations of payments and more freight forwarder claims, which involve multiple exporting companies.  This slows down the process.  In addition, the claims at issue are older and Customs is undertaking the paper search for post-mid 1990 claims.  See id. at 53.  These facts are alleged to result in a process which cannot meet the 500 claims per month pace of the previous court-ordered processes.  See United States Shoe Corp. v. United States, 22 CIT 1061 (1998) and Swisher Int'l, Inc. v. United States, Slip. Op. 01-29 (Ct. Int'l Trade Mar. 13, 2001) (claims resolution order).  Mr. Smith opined that if the court ordered processing of 500 claims per month, the likely result is that Customs would abandon its verification procedures and some improper refunds would be made.[5]  Hr'g Tr. at 53–54.

---

[5]  Because the payments were not subject to verification of proper classification, i.e. by the importer, exporter, domestic shipper, etc., at the time of payment, many errors have been detected in Customs computer records.  Verification with paper documentation is necessary to avoiding refunding payments which were legally owed.  Apparently, the classification errors were made by the payors and perpetuated by the receiving banks and then Customs.

**Findings of Facts/Discussion**

The court has no reason to doubt Customs's depiction of its processing and the reasons therefor. Plaintiffs' cross-examination of Mr. Smith revealed no inconsistencies or any other reason to doubt his credibility. Neither party, however, presented direct evidence of what exactly Customs was doing between December 2000, when it knew it would have to process the administrative claims, and September 2001, when the first certifications occurred. Nonetheless, the court infers from the evidence presented to the court that, during this period, Customs was following government contracting procedure in order to put its multiyear processing contract in place. Next, it was preparing and publishing its regulations, including a comment period, which resulted in changes to the final version. Finally, it was organizing and training the assigned personnel. Plaintiffs have never made clear what else Customs should do and how it could do it faster. Thus, the court cannot conclude that Customs has refused to do its duty or violated any duty it owed plaintiffs in this regard. Under such circumstances, mandamus will not issue. See Sharp Corp. v. United States, 13 CIT 951, 959, 725 F. Supp. 549, 556 (1989) (citing Kerr v. United States Dist. Ct., 426 U.S. 394, 403 (1976) for the proposition that "mandamus should issue only where the clear duty owed to plaintiff has been refused.").

Accordingly, the court has no reason to interfere in Customs's administrative decision-making or to assume supervision of the project.  So long as Customs does not relax in its duty to get these improperly obtained payments, on which interest is not accruing, into the hands of the payors on a reasonable time schedule, the court will stay its hand.


_____
Jane A. Restani
JUDGE


Dated:   New York, New York.
         This 3rd day of April, 2003.